COLEMAN, JUSTICE, DISSENTING:
 

 ¶ 59. I would affirm the Court of Appeals' decision holding that the public records sought by Gulf Publishing Company, Inc., were exempt under the Mississippi Public Records Act's investigative-reports exemption and that reversed the chancellor's finding of contempt by the Department of Audit. Therefore, I dissent.
 

 I. The Department of Audit did not waive the investigative reports exemption under the Mississippi Public Records Act.
 

 ¶ 60. The chancellor found and the majority holds that the Department of Audit waived any claim that the records sought by Gulf Publishing constituted investigative records and therefore were exempt under the Public Records Act. The majority bases its holding that the Department of Audit waived the exemption on the fact that two special assistant attorneys general, assigned to both the Department of Marine Resources and the Department of Audit, respectively, drafted and submitted a protective order requesting that the circuit court modify the grand jury subpoena to allow the Department of Marine Resources to release to Gulf Publishing copies of the public records. However, the majority cites no case or statutory law to support the proposition that the Department of Audit, which was not yet a party to the lawsuit, could have waived the exemption to the Public Records Act by the drafting of a protective order by two special assistant attorneys general.
 

 ¶ 61. Mississippi Code Section 25-61-12(2)(a) provides that "[w]hen in possession of a law enforcement agency, investigative reports shall be exempt from the provisions of this chapter; however,
 
 a law enforcement agency, in its discretion, may choose to make public all or any part of the investigative report
 
 ."
 
 Miss. Code Ann. § 25-61-12
 
 (2)(a) (Supp. 2016) (emphasis added). The statute does
 
 not
 
 provide that, if the law enforcement agency does make public any part of the investigative report, it waives the right to withhold other, undisclosed parts. In fact, it provides the exact opposite: that a law enforcement agency can provide only part of the investigative report or all of the investigative report if it so chooses. As the majority points out, the circuit court's protective order applied only to records in the possession of the Department of Marine Resources, and did not apply to the contested, original documents that were in the sole possession of the Department of Audit. (Maj. Op. at ¶ 41). The Department of Audit did not waive the exemption as to records that the attorney for the Department of Audit did not arrange to be included in the circuit court's order. The chancellor made, and the majority makes, the mistake of applying an event and order applicable only to the records possessed by Marine Resources to documents possessed only by the Department of Audit. There exists no evidence in the record that the Department of Audit waived the exemption as to the documents in its sole possession.
 

 ¶ 62. Further, the protective order was submitted by the Department of Marine Resources, and it wholly excluded the Department of Audit. The protective order was entered on January 22, 2013. The Department of Audit did not become a party until August 2013. Prior to the Department of Audit becoming a party, Gulf Publishing never submitted a written records request to the Department of Audit. Before being made a party, the Department of Audit did every identifiable thing in its power to help the Department of
 Marine Resources, which could not claim an exemption under the Public Records Act, to comply with the records request. After being made a party, the Department of Audit immediately claimed the exemption.
 

 II. The records were exempt from disclosure under the Public Records Act.
 

 ¶ 63. The subpoena issued by the Harrison County Grand Jury required the Department of Marine Resources' records to be "to be 'retained in-place,' " to "be accessible upon demand by agents of the Mississippi Office of State Auditor," and to "be released to no entity other than [the Department of Audit]." The grand jury never relinquished control of the records. The subpoena designated the Department of Audit as the custodian of the records. Neither the grand jury nor the Department of Audit in its custodial capacity ever received a written request for the records.
 

 ¶ 64. Mississippi Code Section 25-61-11 provides:
 

 The provisions of this chapter shall not be construed to conflict with, amend, repeal, or supersede any constitutional law, state or federal statutory law, or decision of a court of this state or the United States which at the time of this chapter is effective or thereafter specifically declares a public record to be confidential or privileged, or provides that a public record shall be exempt from the provisions of this chapter.
 

 Miss. Code Ann. § 25-61-11
 
 (Supp. 2016).
 

 ¶ 65. Proceedings before the grand jury are secret.
 
 See
 

 Addkison v. State
 
 ,
 
 608 So.2d 304
 
 , 312 (Miss. 1992) ("It is elemental that grand jury proceedings are cloaked with secrecy.") (citing
 
 Miss. Code Ann. §§ 97-9-53
 
 (1972), 13-5-61 (Supp. 1991) ).
 

 If a grand juror, witness, district attorney, clerk, sheriff, or any other officer of the court, disclose the fact of an indictment being found or returned into court against a defendant,
 
 or disclose any action or proceeding had in relation thereto, before the finding of the indictment
 
 , or in six months thereafter, or until after the defendant shall have been arrested or given bail or recognizance to answer thereto, he shall be fined not more than two hundred dollars.
 

 Miss. Code Ann. 97-9-53 (1972) (emphasis added);
 
 see also
 
 Miss. R. Crim. P. 13.5(b)(3). In
 
 State Farm Fire and Casualty Co. v. Hood
 
 , the United States District Court for the Southern District of Mississippi considered whether portions of a court record should be sealed pursuant to Sections 13-5-61 and 97-9-53. The Court held:
 

 The only document brought to this court's attention that is arguably deserving of protection is the grand jury subpoena issued to State Farm on August 23, 2007. However, ... the court is not convinced that disclosure of this subpoena would in any way reveal to the public the specifics of this grand jury investigation. The subpoena does not reveal the target of any investigation or the issues being investigated.
 

 State Farm Fire & Cas. Co. v. Hood
 
 , No. 2:07CV188 KS-MTP,
 
 2007 WL 4208288
 
 , at *1 (S.D. Miss. Nov. 2, 2007). In the present case, Investigator Chris Lott testified that he "used everything that's listed in [the] subpoena as part of the investigation" and that the undisclosed records related to the two accounts would disclose the identity of witnesses and defendants and impede the ongoing investigation. The records would reveal the targets and specific issues being investigated.
 

 ¶ 66. Further, Harrison County Circuit Court Judge Roger Clark issued a protective
 order finding that the subpoena duces tecum prohibited the Department of Marine Resources from complying with the Public Records Act and allowing the release of documents in the Department of Marine Resources' possession. Therefore, the subpoena requiring that the requested records be released to no entity other than the Department of Audit created an exemption under law for the requested records.
 

 ¶ 67. The majority further finds that the records at issue did not constitute "investigative reports" exempted by the Public Records Act. Section 25-61-3 defines investigative reports as follows:
 

 (f) "Investigative report" means records of a law enforcement agency containing information beyond the scope of the matters contained in an incident report, and generally will include, but not be limited to, the following matters if beyond the scope of the matters contained in an incident report:
 

 (i) Records that are compiled in the process of detecting and investigating any unlawful activity or alleged unlawful activity, the disclosure of which would harm the investigation which may include crime scene reports and demonstrative evidence;
 

 (ii) Records that would reveal the identity of informants and/or witnesses;
 

 (iii) Records that would prematurely release information that would impede the public body's enforcement, investigative or detection efforts;
 

 (iv) Records that would disclose investigatory techniques and/or results of investigative techniques;
 

 (v) Records that would deprive a person of a right to a fair trial or an impartial adjudication;
 

 (vi) Records that would endanger the life or safety of a public official or law enforcement personnel, or confidential informants or witnesses;
 

 (vii) Records pertaining to quality control or PEER review activities; or
 

 (viii) Records that would impede or jeopardize a prosecutor's ability to prosecute the alleged offense.
 

 Miss. Code Ann. § 25-61-3
 
 (f) (Supp. 2016). We explained earlier in the year that:
 

 [s]ubsection (3)(f) is meant to be read in conjunction with subsection (3)(e). Subsection (3)(f) distinguishes the more detailed "investigative report," which contains matters that are beyond the simple information found in an incident report, and gives an illustrative list of type of information. While MDOC is correct that the list is nonexhaustive, it is nonetheless limited to the scope of subsection (3)(f). Subsection (3)(f) chiefly contemplates the investigatory stage(s) of criminal matters, and it allows law enforcement agencies to determine what is public record and what is not at this stage of the criminal process, so as not to jeopardize the investigation and/or endanger those affiliated.
 

 Miss. Dep't of Corr. v.Roderick & Solange MacArthur Justice Ctr.
 
 ,
 
 220 So.3d 929
 
 (Miss. 2017).
 

 ¶ 68. After the protective order was entered, Gulf Publishing received all the records requested except for certain unscanned, original documents related to two accounts. As noted above, Investigator Chris Lott testified that everything in the subpoena was used during the investigation and that the records would disclose the identity of witnesses and defendants and frustrate the ongoing investigation if specifics were printed in the newspaper. It is clear that the remaining documents, at least, fell within the investigative reports exemption to the Public Records Act.
 

 ¶ 69. I am wholly unconvinced by the logic of the majority and the chancellor that, because the circuit court's protective order "only partly" modified the grand jury subpoena, the original, uncopied documents were not truly considered by the Department of Audit to be investigative reports. (Maj. Op. at ¶ 45). The modification to which I think the majority refers, that documents within the possession of the Department of Marine Resources could be produced to Gulf Publishing, continued the protection afforded by grand jury secrecy and the investigative reports exception to the uncopied, original documents at issue. The record shows not that the Department of Audit and its attorneys considered the uncopied, original documents to be no different than those already in the possession of Marine Resources, but rather that the Department of Audit and its attorneys continued to assert that they were protected from disclosure. It cannot follow, as it must for the majority to be correct, that the Department of Audit's attorney, Patterson, involved herself in the proceedings in circuit court and agreed to the protective order that continued to apply the exemption to the uncopied, original documents even though she saw no distinctions between the copied and uncopied original and undisclosed investigative documents.
 

 III. The chancellor erred in holding the Department of Audit in criminal contempt without recusing for the matter to be heard by another judge.
 

 ¶ 70. The chancellor's final order found the Department of Audit in civil contempt for failing to abide by the chancellor's orders directing that the documents be produced to Gulf Publishing. As a penalty for the civil contempt, the chancellor ordered the Department of Audit to pay court costs and reasonable attorneys' fees for the contempt period, which the chancellor found to be from November 5, 2013, to December 5, 2013. However, by the time the chancellor ordered the sanctions, the Department of Audit had purged the contempt. Accordingly, the sanctions were not issued in order to compel compliance with the chancellor's earlier orders but, rather, to punish. Therefore, the chancellor mischaracterized the contempt as civil; it was criminal contempt. Furthermore, because much of the alleged contemptuous behavior took place outside the personal knowledge of the chancellor, it was constructive criminal contempt. The law on contempt required the chancellor to recuse herself, but she did not. Her failure to follow the law on the instant point constitutes reversible error.
 

 ¶ 71. The majority justifies affirmance of the contempt order by characterizing the sanctions as imparted pursuant to Section 25-61-15, which provides:
 

 Any
 
 person
 
 who shall deny to any person access to any public record
 
 which is not exempt
 
 from the provisions of this chapter or who charges an unreasonable fee for providing a public record may be liable civilly
 
 in his personal capacity
 
 in a sum not to exceed One Hundred Dollars ($100.00) per violation, plus all reasonable expenses incurred by such person bringing the proceeding.
 

 Miss. Code Ann. § 25-61-15
 
 (Supp. 2016) (emphasis added). Contrary to the majority's characterization of the chancellor's decision, the chancellor did not sanction the Department of Audit pursuant to Section 25-61-15. Rather, the chancellor entered a detailed order that explained at length that the sanctions were intended as a civil contempt penalty. The chancellor merely footnoted Section 25-61-15.
 

 ¶ 72. Moreover, there are at least two problems with the majority's holding that
 the chancellor did not err in making the Department of Audit pay court costs and one month of Gulf Publishing's attorneys' fees pursuant to Section 25-61-15 alone. (Maj. Op. at ¶ 49). First, the records in question are exempt form disclosure under the Public Records Act, so the Department of Audit could not violate the statute. Second, the statute clearly states that a person in his individual capacity can be liable under Section 25-61-15, not a public body. Therefore, the Department of Audit, as a public body, cannot be liable under Section 25-61-15.
 

 ¶ 73. Turning to the vehicle actually chosen by the chancellor, she found the Department of Audit in civil contempt of her October 31, 2013, bench ruling ordering the Department of Audit to copy and produce the disputed documents and her November 4, 2013, order directing the Department of Audit-hours before the federal subpoena directed him to produce the documents-to copy the documents under the Court's supervision.
 

 ¶ 74. In short, I agree with the Court of Appeals. The chancellor ordered the sanction in her order dated May 27, 2014, but found therein that the Department of Audit had purged the contempt on December 5, 2013. The purpose of civil contempt is to compel compliance with a court order.
 
 In re McDonald
 
 ,
 
 98 So.3d 1040
 
 , 1043 (¶ 7) (Miss. 2012). Because the Department of Audit had complied with the court's order months before the court set the sanctions, it is impossible that the sanctions were imposed to compel compliance. Rather, the sanctions must be considered to be imposed for punishment and were, therefore, proper only if the Department of Audit was guilty of criminal contempt.
 

 Id.
 

 ¶ 75. Moreover, if contempt it was, the Department of Audit's failure to comply was constructive contempt rather than direct contempt. Constructive criminal contempt applies when the contemptuous behavior occurs-even in part-outside the presence of the trial judge.
 

 Id.
 

 at 1044
 
 (¶ 6). On the other hand, direct criminal contempt occurs when the acts in question occur "in the very presence of the judge making all the elements of the offense personal knowledge."
 

 Id.
 

 (citing
 
 Varvaris v. State
 
 ,
 
 512 So.2d 886
 
 , 887-88 (Miss.1987) ). In the case
 
 sub judice
 
 , the chancellor found the Department of Audit in contempt for several acts that occurred outside her presence and as to which she lacked personal knowledge, including delivering the contested documents to the federal grand jury and failing to produce the contested records to the Department of Marine Resources. Accordingly, the contempt, if any, was constructive criminal contempt.
 

 ¶ 76. A trial judge who institutes constructive criminal contempt proceedings must recuse and let the hearing be conducted by another judge.
 
 McDonald
 
 ,
 
 98 So.3d at 1044
 
 (¶ 9). The Court has repeatedly so held.
 

 Id.
 

 In the instant case, the chancellor did not recuse herself; the Court of Appeals correctly held that the finding of civil contempt against the Department of Audit must be reversed. The chancellor further erred in finding that the Department of Audit had waived her recusal, as the recusal is something the law requires directly of the judge.
 

 Id.
 

 The party need not request it at all, and therefore cannot waive it by failing to request it.
 

 Conclusion
 

 ¶ 77. The facts of the instant case do not bear out the majority's holding that the Department of Audit waived the investigatory records exemption or grand jury secrecy as to the uncopied, original documents that at the relevant time were in the sole possession of the Department of Audit. The facts show the opposite: although the Department of Audit acted to facilitate
 the dissemination of those records that had been copied and remained in the possession of the Department of Marine Resources, it continued to protect the uncopied, original documents. Protection from disclosure not being waived, I would hold that the chancellor erred in ordering their production to Gulf Publishing pursuant to both.
 

 ¶ 78. Moreover, pursuant to well-established law, the chancellor erred in finding the Department of Audit in criminal contempt without recusing herself. In affirming the contempt award against the Department of Audit, the majority undermines fundamental due process protections that should be available to parties accused of constructive criminal contempt.
 

 ¶ 79. Finally, in affirming the chancellor and reversing the Court of Appeals, the majority leaves unaddressed other assignments of error raised by the appellants that could result in a reversal of the chancellor. For example, the Court of Appeals declined to consider the Department of Marine Resources' argument that the chancellor erred in recanting earlier rulings in its favor because it found the investigative records exemption issue to be dispositive of all issues. The majority today remains silent as to the issue and other issues raised in the five appellants' briefs, even though, on the merits, one or more of them might well command a different holding from us. The choice of a majority of the Mississippi Supreme Court to ignore issues raised by parties appearing before it troubles me. If the majority does not wish to address them, perhaps the majority should remand the case to the Court of Appeals to consider the remaining, as yet unaddressed, issues.