573 So.2d 684 (1990)
William LAWSON
v.
STATE of Mississippi.
No. 07-KA-59378.
Supreme Court of Mississippi.
December 12, 1990.
Rehearing Denied February 6, 1991.
Thomas J. Lowe, Jr., Jackson, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, J.
ROY NOBLE LEE, Chief Justice, for the Court:
William Lawson, a Tupelo attorney, was found guilty of constructive criminal contempt by the Lee County Circuit Court, Honorable Elzy J. Smith, presiding, and was sentenced to pay a fine of two hundred and fifty dollars and to serve a term of ten days in the Lee County Jail. The jail sentence was suspended. Lawson appeals from the judgment, contending that the Lee County Circuit Court erred in holding him in criminal contempt and assigns the following issue for this Court to decide:
EVIDENCE OF HIS GUILT WAS NOT SHOWN TO BE BEYOND A REASONABLE DOUBT.

*685 FACTS
Appellant, a licensed attorney at law, tried an important medical malpractice case, styled Frances and David Nichols v. Tubb et al., in the Lee County Circuit Court. The trial began on January 19, 1988, and concluded on February 4, 1988. Apparently, the courtroom atmosphere was charged with emotion, since it was rumored that the defendants had offered on two occasions to settle the suit for in excess of 1.5 million dollars, which was not accepted by the plaintiffs. On February 4, in the absence of the jury but in the presence of Lawson and other attorneys in the case, the trial judge, Honorable Frank Russell, read and entered an order governing the conduct of attorneys, parties and other persons in the courtroom upon, and after, return of the jury's verdict.[1]
Subsequent to reading the order, Judge Russell brought the jury into the courtroom and the jury presented its verdict for the defendants. Judge Russell advised the jury that the mentioned order had been entered and that it prohibited the attorneys and parties of the case from initiating any conversation with members of the jury.
On the Saturday immediately following the trial, Dr. Gary, a witness in the trial, who had been discharged prior to the time that the aforementioned order had been read, and who had no knowledge of the same, telephoned Mrs. Denham, an alternate juror in the case. Denham had been a long time friend of Dr. Gary and Gary, concerned with the jury verdict, questioned Denham about such verdict. During their conversation Denham made mention of the fact that she had knowledge that the plaintiff in the trial had been receiving seven thousand dollars a month from workmen's compensation. Gary, concerned that Denham was privy to information which was not properly put into evidence before the jury, called Lawson the next day, Sunday, and advised him of his conversation with Denham.
Lawson initially attempted to call Judge Russell to relate to him the Gary/Denham discussion. Although Lawson made several attempts to contact Judge Russell, he was unable to do so. Lawson then called Denham. Denham refused to give Lawson any information asserting that she would not talk to Lawson without first gaining Judge Russell's permission to do so.
Shortly after Lawson's conversation with Denham, Lawson then called Chester Stasko, a juror in the case. Stasko related to Lawson that he had become aware of the workers compensation payments to the plaintiff the evening after the jury verdict had been given.
The following Monday morning, Lawson went to Judge Russell's office to relate to Russell what had transpired between himself and the jurors. Russell showed Lawson a copy of his order which had prohibited communication with the jurors absent obtaining prior court approval. At this time Lawson immediately informed Judge Russell that he had taped the conversations between himself and the jurors.
Criminal Contempt proceedings were begun against Lawson in the Lee County Circuit Court before Judge Elzy J. Smith *686 sitting specially[2]. Lawson asserted that although he was present at the time Judge Russell's order had been read, that due to a hearing deficiency he was unable to comprehend the same. Judge Smith found Lawson guilty of constructive criminal contempt and fined Lawson two hundred and fifty dollars. In addition to such fine, Judge Smith also sentenced Lawson to serve ten days in the Lee County Jail. Judge Smith suspended the jail sentence due to the many apologies made to the court by Lawson and due to the fact that Lawson provided the court with tapes of the prohibited conversations.[3]

LAW
Criminal contempt is conduct which is directed against the dignity and authority of the court or the judge acting judicially. Cook v. State, 483 So.2d 371 (Miss. 1986). "It arises from an act obstructing the administration of justice which tends to bring the court into disrepute or disrespect." Id. at 374. In essence the offense occurs when a defendant wilfully, maliciously and contumaciously refuses to comply with a decree of the court. Cook v. State, supra; Langford v. Langford, 253 Miss. 483, 176 So.2d 266 (1965).
In the case at bar, Lawson was convicted of constructive criminal contempt which occurred outside the presence of the court. Constructive contempt is "an act calculated to impede or embarrass, obstruct, defeat, or corrupt administration of courts of justice when the act is done beyond the presence of the court." Coleman v. State, 482 So.2d 221, 222 (Miss. 1986) (quoting Knox v. State, 160 Miss 494, 497, 135 So. 206, 207 (1931)). This court proceeds ab initio in criminal contempt proceedings and it is the Supreme Court's responsibility to determine on the record whether the defendant is guilty of the offense, not whether the lower court judge was manifestly wrong in his finding. Cook, 483 So.2d at 374. The burden of proof is on the state and the state must prove each element of criminal contempt beyond a reasonable doubt. Miss. Code Ann. § 11-51-11(4) (Supp. 1990).
Lawson asserts that the state has failed to prove beyond a reasonable doubt that he is guilty of constructive criminal contempt. The substance of Judge Russell's order had been twice read in the presence of Lawson, once prior to the jury being brought in and once in the jury's presence. Lawson does not dispute that the order was read but rather asserts that he did not comprehend the order. Lawson submits that he has a slight hearing disability which makes comprehension of the spoken word difficult. Lawson also suggests that compounding his hearing disability was the fatigue he was experiencing as the result of such a long and hard fought trial. Lawson states that Judge Russell's order was unusual in that it required prior court permission to contact jurors and that Lawson had never heard such an order before.
While Lawson asserts that he did not comprehend Judge Russell's order his actions suggest otherwise. Lawson, upon learning from Dr. Gary that Mrs. Denham may have had improper information, attempted to contact Judge Russell on several occasions[4]. Sometime on that Sunday afternoon, after some of the unsuccessful calls to Judge Russell were made, Lawson called alternate juror Mrs. Denham.
Lawson: I Know you are probably tired of looking at me, but we were mighty close together for the last three weeks. Do you remember the judge?
Denham: Yeah.
Lawson: You know, he told me to check with some of the jurors. And there are just one or two questions that I need to ask you.

*687 Denham: Do you mind if I call the judge and ask him?
Lawson: Yeah. I have got his number would you like to?
Denham: Yeah. I would like to call him and ask him if he gave you permission to call and ask me questions.
Lawson: Oh, yes. Do you remember when you were standing there and, you know, he said two things. One he didn't want any demonstrations, you know, any outburst. And second, he said he would allow  I didn't know what counselor he was talking about because we didn't know the verdicts yet, you know. And see, you weren't a juror.
Denham: That's right I wasn't.
Lawson: You were an alternate.
Denham: Uh-huh.
Lawson: And he, you know, said he would give us permission to either subpoena some witness back into court or find out, you know, if it is agreeable with them, you know, what happened.
Denham: Well, I am going to have to talk to him first.
Although Lawson asserts he was unaware of the substance of Judge Russell's order prohibiting communications with jurors, Lawson stated to Denham "You know, he told me to check with some of the jurors" even though Judge Russell never told Lawson anything of the kind. When Denham refused to talk with Lawson, since she was of the opinion that she needed Judge Russell's permission as a prerequisite, Lawson attempted to get Denham to talk with him by reminding her that she was not a juror but rather she was an alternate juror. When Denham asked Lawson for Judge Russell's phone number Lawson attempted to change the subject of the conversation, even though Lawson must have had Judge Russell's phone number handy since Lawson had been trying to call Judge Russell all day. Instead of conveying Judge Russell's phone number to Denham, as she requested, Lawson told her that he would put her in touch with the judge.
When Denham refused to talk to Lawson, he then called Stasko, another juror. Although Lawson asserts that he did not comprehend Russell's order he stated to Stasko:
Lawson: And listen, you know what the judge said there at the end when the verdicts were read?
Stasko: Uh-huh.
Lawson: He said that counsel would be permitted to call, you know,. And now you don't have to say one thing to me if you don't want to.
We are of the opinion that the state has proved beyond a reasonable doubt that Lawson willfully, and contumaciously violated Judge Russell's order and committed constructive criminal contempt. Judge Russell testified that the order he read was one he used frequently and that he has heard orders similar in content read on several occasions. Lawson admits to being present in the court room where Judge Russell read the order once with the jury out and then subsequently conveyed the relevant parts to the jury, with counsel present, when the jury was in. Notwithstanding the order, when unable to contact Judge Russell, Lawson contacted two jurors and attempted to have them discuss items relevant to the case with him, by pretending to have authority to contact such jurors from Judge Russell.
The judgment of the lower court is affirmed.
SENTENCE OF CONTEMPT OF COURT AND PAY A FINE OF $250.00 AND SERVE TEN DAYS IN THE LEE COUNTY JAIL, TEN DAYS SUSPENDED UPON PAYMENT OF FINE AND COURT COSTS AFFIRMED.
HAWKINS, P.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
ANDERSON, J., not participating.
NOTES
[1] REFERENCE CONDUCT IN COURTROOM UPON RETURN OF JURY VERDICT AND QUESTIONING OF JURORS
The jury in this case having indicated to the Court it is prepared to return to the courtroom for the purpose of reporting as to its verdict in this case.
IT IS ORDERED AND ADJUDGED as follows:
1. Upon the return of a verdict by the jury in any civil or criminal action, neither the attorneys in the action, the parties, nor any other person in the courtroom or else where shall express to the members of the jury their pleasure or displeasure with the verdict.
2. After the jury has been discharged, neither the attorneys in the action, the parties, nor any other person shall at any time or in a manner communicate with the jury or any member thereof regarding the verdict.
Provided, however, that if any attorney believes in good faith that the verdict may be subject to legal challenge, such attorney may apply ex parte to the trial judge for permission to interview one or more members of the jury regarding any fact or circumstance claimed to support such legal challenge. If satisfied that good cause exists, such judge may grant permission for the attorney to make the requested communication and shall prescribe the terms and conditions under which the same may be conducted.
[2] Judge Smith is a circuit judge for the Eleventh Circuit Court District of Clarksdale Mississippi.
[3] Lawson, unbeknownst to jurors Denham and Stasko, taped all of the conversation he had with Denham and taped most of the conversation he had with Stasko.
[4] Lawson attempted to reach Judge Russell at his home at 12:58 p.m.. Lawson learned that the judge was not home and that he may be at his cabin. Lawson then made several other attempts to reach the judge at his cabin and office at 2:59, 3:00, 4:41, 8:42, and 8:55 p.m.