WALLER, CHIEF JUSTICE,
FOR THE COURT:
¶1. Attorney Greg Spore appeals the order finding him in direct criminal contempt by Judge Jeff Weill Sr. of the Hinds County Circuit Court for displaying willful, contemptuous behavior that interfered with the orderly administration of justice. Finding that the record supports the trial court’s order beyond a reasonable doubt, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. On July 13, 2015, Greg Spore, Hinds County Assistant Public Defender, appeared in the Circuit Court of the First Judicial District of Hinds County before the Honorable Jeff Weill Sr., Circuit Judge, to represent Jeremy Cowards in an adjudication hearing, following the violation of his probation. Cowards had been indicted for house burglary and was ordered on January 11, 2011, to Regimented Inmate Discipline (RID).[1] On October 31, 2011, when Cowards had completed the RID program, he was sentenced to five years of nonadjudicated probation. Thereafter, on May 6, 2015, Cowards was convicted of domestic violence in Jackson Municipal Court for punching a woman while she held a young child.
¶3. At Coward’s hearing on the probation violation before Judge Weill, he was found guilty of burglary for which he previously had received nonadjudicated probation. After the pronouncement of guilt, Judge Weill asked whether the defense had any argument for the court to consider for sentencing. Spore enumerated various reasons for the court to consider allowing Cowards to remain out of jail. Spore stated:
There are many factors at play here Your Honor concerning both employment, family—he’s got the support of *225 both immediate and extended family in the community, much accountability. He has two daughters, one an infant daughter; in fact bom in December, December 24th, his Christmas miracle I believe he refers to her as. Johneia I believe her name is. And he’s trying, he wants to get back to his family. He wants to get back to his employer. I left a message trying to get up with Mr. Tony Lofton here in the security service here in Jackson, Mississippi. He’s employed Mr. Cowards in the past, and it’s my understanding that he’s willing to employ him in the future, as soon as he is released.
¶4. Following Spore’s argument, Judge Weill asked whether the defense had “anything further in argument on the sentencing to be imposed” and whether the defendant wanted to say anything. Spore responded that he was speaking on Cowards’s behalf.
¶5. Judge Weill asked a third time whether Spore had “fully made [his] argument,” and Spore again replied, “[y]es, Your Honor.” Spore continued: “[a]nd again, we would just implore the Court to ... allow him to maintain his non-adjudicated status.”[2] Judge Weill then stated that “the reason I’m asking if you’ve fully made your argument, is after I pronounce sentence I’m not going to hear further argument—[.]” Spore replied, “[u]nder-stood, Your Honor.” Judge Weill then again told Spore to “finish your argument.” Spore continued:
Yes, Your Honor. I believe, and on the outset I did make mention of the preliminary healing. That was a concern only insofar as we don’t know if indeed one took place. And if one did take place we don’t know the date of that particular hearing. That would just give us a better sense of the timeline of how things have run from his arrest, the initial arrest for the alleged—excuse me—simple domestic. As well as I believe a warrant in this instance was filed mid June. And we’re just trying to gauge if that was early on. I have a suspicion that the preliminary hearing may have taken place in March in the immediate wake of his initial arrest, prior to an affidavit being filed with the Court for a warrant for his arrest for the revocation, for the violation allegation.
Judge Weill then asked “anything further?” and Spore responded “[n]o, Your Honor.”
¶6. Judge Weill then sentenced Cowards to ten years in prison with three years suspended, after which the following colloquy took place between Spore and Judge Weill:
MR. SPORE: Your Honor we just have one—it’s not an argument Your Honor.
THE COURT: Excuse me.
MR. SPORE: We had one last point. We’d assumed the reason why—
THE COURT: Excuse me Mr. Spore.
MR. SPORE: Yes, sir.
THE COURT: I gave you ample opportunity, twice, to make all of your arguments—
MR. SPORE: This is not an argument.
THE COURT:—and I’m not going to listen to further argument.
MR. SPORE: Your Honor.
THE COURT: So we’re going to conclude this matter and move on to—and there will be five years of post-release supervision when he gets out of jail.
MR. SPORE: Your Honor may I please make my record. This is not an argu *226 ment necessarily. There was an assumption that the .Court would follow Blocker[3] in this instance. The Court made mention of the fact that Mr. Cowards, on his- five-year non-adjudicated sentence, original sentence, served I believe six months in the RID Program, successfully completed the RID Program. That fact, that fact alone, he cannot be sentenced.
Judge Weill stopped Spore a second time: “Excuse me Mr. Spore. I’ve made my ruling. I gave you ample opportunity to make your argument. So we’re concluding this matter at this time. Please sit down.” Spore responded, again, that he was “simply trying to make my record.” Judge Weill then found Spore in direct criminal contempt and fined him $100.00, to be paid from personal funds by 12:00 p.m. (noon) on July 14, 2015. Judge Weill’s written order stated that “Spore was held in direct criminal contempt due to his failure to abide by an order of the Court, for willful disruptive interference in court proceedings, and for violating Rule 3.02 of the Uniform Circuit and County Rules,”
¶7. Spore filed a Notice of Appeal on August 12, 2015, and raised the following issues: (1) Whether the trial court erred in issuing an order finding Greg Spore in direct criminal contempt where Greg Spore did not display any contemptuous conduct, and (2) whether the trial court erred in finding, that Greg Spore violated Rule 3.02 of the Uniform Circuit and County Court Rules where Greg Spore did not in any way act unprofessionally or disrespectfully toward the judge. In the State’s briefing it stated the issues differently. The State argued that the trial court did not err in finding Greg Spore in direct criminal contempt for (1) Spore’s failure to obey an order of the court and (2) his willful disruption and interference with the orderly proceedings of the court. The court will address the ■ issue for decision as whether the record shows beyond a reasonable doubt that Spore displayed willful, contemptuous conduct that interfered with the orderly administration of justice.
STANDARD OF REVIEW
¶8. This Court applies an “ab initio”[4] standard to cases of criminal contempt. In re Smith, 926 So.2d 878, 885 (Miss. 2006) (citing Brame v. State, 755 So.2d 1090, 1093-94 (Miss. 2000)). This Court “ ‘is not bound by the manifest error rule when the appeal involves a conviction of criminal contempt. Instead, this Court proceeds ab initio to determine whether the record proves the appellant guilty of contempt beyond a reasonable doubt.’” In re Smith, 926 So.2d at 886 (quoting Purvis v. Purvis, 657 So.2d 794, 797 (Miss. 1994)). “The burden of proof to establish that contempt has been committed is on the party asserting that contemptuous conduct has occurred” and, “[i]n a proceeding for criminal contempt, evidence of guilt must be established beyond a reasonable doubt.” In re Smith, 926 So.2d at 886 (citing In Interest of Holmes, 355 So.2d 677, 679 (Miss. 1978)).
DISCUSSION
Whether the record supports, beyond a reasonable doubt, that Spore displayed willful, contemptuous conduct that interfered with the orderly administration of justice.
¶9. The power to hold an officer of the court in contempt “is an important *227 tool for keeping order and maintaining an efficient court system.” In re Hoppock, 849 So.2d 1275, 1278 (Miss. 2003). “A court’s power to maintain control over the proceedings before it is not grounded in its punitive jurisdiction, but in the necessary and inherent power to regulate its proceedings.” Knott v. State, 731 So.2d 573, 576 (Miss. 1999) (citing In Re Lewis, 654 So.2d 1379, 1383 (Miss. 1995)).
¶10. At the probation revocation hearing, the trial judge asked Spore three different times whether he had finished making his argument.. After the third time, Spore stated that he had. Judge Weill then stated that “after I pronounce sentence I’m not going to hear further argument.” Following this exchange, Spore offered additional argument. When he completed this, the judge then asked a fourth time “anything further?” Spore responded, “[n]o Your Honor.”
¶11. Despite multiple cautionary admonitions, Spore did what the judge warned him of, and what he agreed not to do, restarting his argument following the pronouncement of the sentence. The court tried to stop Spore at least five times. Despite these requests to stop arguing and to sit down, Spore continued to speak and did not sit down. It was at this point that the judge found Spore in direct criminal contempt of the court and fined him $100.
¶12. Spore claimed he needed to make his record and zealously represent his client. However, behavior that “ ‘tends to bring the court into disrepute or disrespect’ ” is criminal contempt. Purvis v. Purvis, 657 So.2d 794, 797 (Miss. 1994) (quoting Lawson v. State, 573 So.2d 684, 686 (Miss. 1990)). Spore’s claim that he needed to make his record lacks merit, as he had ample opportunities to do so. In Mississippi Bar v. Lumumba, Lumumba claimed that he needed to make a record and ignored instructions from the judge. Mississippi Bar v. Lumumba, 912 So.2d 871, 878 (Miss. 2005). The Court recognized that “[Lumumba’s] verbal argument at the hearing ... was solely for the purpose of attempted persuasion of Judge Gordon [and disputing his announced ruling], not ‘making a record.’” Id. at 878. The same could be said of Spore’s attempts in the case sub judice.
¶13. Additionally, while Lumumba claimed he was zealously representing 'his client, the Court of Appeals affirmed his criminal-contempt sanction and found his behavior was “disrespectful to the judge and disruptive to court proceedings.” Lumumba v. State, 868 So.2d 1018, 1021 (Miss. Ct. App. 2003).[5] In another case, this Court affirmed a charge of criminal contempt where a lawyer simply had refused to apologize for stating alleged falsehoods before the court. In Re Smith, 926 So.2d 878, 885 (Miss. 2006).
¶14. Mississippi Rule of Professional Conduct 3:5 directs a lawyer not to “engage in conduct intended to disrupt a tribunal.” Miss. Rule Profl Conduct 3.5(d). The comment to the rule states that a lawyer’s ability to “[r]efrain[] from abusive or obstreperous[6] conduct is a corollary of the advocate’s right to speak on *228 behalf of litigants.” Id. at 3.5(d) cmt. Spore’s announced purpose of diligently-representing his client does not excuse conduct that violates Rule 3.5.
¶15. Judge Weill also found that Spore had violated Rule 3.02 of the Uniform Rules of Circuit and County Court Practice. That rule states that “[attorneys should manifest an attitude of professional respect toward the judge, the opposing attorney, witnesses, defendants, jurors, and others in the courtroom. (Emphasis added.) Spore failed to heed Judge Weill’s requests and was clearly disrespectful before the court.
CONCLUSION
¶16. Because the record establishes beyond a reasonable doubt that Spore was guilty of direct criminal contempt for displaying willful, contemptuous conduct in the courtroom that interfered with the orderly administration of justice, the trial court’s order is affirmed.
¶17. AFFIRMED.
RANDOLPH, P.J., COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING, J.

. Mississippi Code Section 47-5-110.2 (Rev. 2015) provides that "[fjrom and after January 1, 2017, no person to be sentenced to the custody of the Mississippi Department of Con-rections shall be ordered to a Regimented Inmate Discipline (RID) program by any court of this state.”

. Because Judge Weill had just adjudicated his burglary conviction, Spore was likely arguing for some type of probation or some other sentence that does not require incarceration.

. It appears Spore was citing a case to Judge Weill. But nothing in the record before this Court indicates to what Spore was referring. And it was not mentioned prior to Judge Weill’s ruling.

. "Ab initio”- is defined as "[fjrom the beginning." Ab initio, Bryan A. Gamer, Black’s Law Dictionary (10th ed. 2014).

. Lumumba’s antics certainly were more egregious. In addition to refusing to stop arguing with the judge after repeated requests, he made overtures that justice was for sale. But his punishment also was more severe, as his sentence included three days in jail. It is also of note that the Bar suspended Lumumba for six months from law practice. Mississippi Bar v. Lumumba, 912 So2d 871, 889 (Miss. 2005).

. Webster's Dictionary defines this as “marked by unruly or aggressive noisiness” and "stubbornly resistant to control.” Obstreperous, Random House Webster’s Unabridged Dictionary (2d ed. 1999).