# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00581-SCT

*JOHN I. DONALDSON, COUNTY PROSECUTOR*
*FOR YAZOO COUNTY, MISSISSIPPI*

*v.*

*HONORABLE MARY B. COTTON, COUNTY*
*COURT JUDGE/YOUTH COURT JUDGE OF*
*YAZOO COUNTY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/15/2020 |
| TRIAL JUDGE: | HON. MARY BARNETTE COTTON |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY YOUTH COURT |
| ATTORNEY FOR APPELLANT: | BARRY STUART ZIRULNIK |
| ATTORNEY FOR APPELLEE: | MARY BARNETTE COTTON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | VACATED AND REMANDED - 04/07/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Judge Mary B. Cotton, the Yazoo County Youth Court Judge, ordered Attorney John

Donaldson,[1] first verbally then by written order dated April 3, 2020, to prepare the court's

orders for youth court matters. Donaldson refused to abide by Judge Cotton's order of April

3, 2020. As a result, Judge Cotton determined that Donaldson was in contempt of court and

---

[1]Donaldson serves as the county prosecutor for Yazoo County. *See* Miss. Code § 43-21-117(2) (Rev. 2021) ("The county prosecuting attorney shall serve as the youth court prosecutor[.]").

she entered an order of contempt, fining Donaldson for his past and continuing refusal to draft the youth court orders.

¶2. Donaldson now appeals the order of contempt. He argues that Judge Cotton lacked authority to order him to prepare orders for youth court matters. He maintains that preparing orders is the responsibility of the judicial staff and that he was under no legal obligation to do so. Donaldson argues also that the order of contempt violated his due process rights.

¶3. This Court finds that a youth court judge has the inherent authority to order a county prosecutor to prepare orders in youth court matters. We find also that Donaldson's alleged contempt is constructive criminal contempt and that his due process rights were violated. Therefore, the Court vacates the order of contempt and remands the case for further proceedings.

**STATEMENT OF THE FACTS**

¶4. Before taking the bench, Judge Cotton had served as the Yazoo County prosecutor. Judge Cotton asserts in her brief that "[u]pon learning she was unopposed in the election to the position of County Court/Youth Court Judge, Judge Cotton reached out to [Donaldson] regarding the possibility of his accepting the position as County/Youth Court Prosecutor to fulfill Judge Cotton's unexpired term in that position." She goes on to say that she explained to Donaldson the responsibilities of the position, including "the fact that the County/Youth Court Prosecutor in Yazoo County was responsible for drafting the Orders following certain Youth Court hearings." Donaldson agreed to accept the position, and he was appointed by

the county's board of supervisors in January 2019. Judge Cotton began serving as the Yazoo County youth court judge in January 2019.

¶5.     Immediately after Donaldson was appointed, he received training in the use of the youth court's MYCIDS (Mississippi Youth Court Information Delivery System) computer program regarding the preparation of court orders. Even though Donaldson participated in MYCIDS training, Judge Cotton did not require him to prepare orders immediately and gave him additional time to learn to use and familiarize himself with the MYCIDS system. Judge Cotton reminded Donaldson several times during 2019 that preparing orders would be his responsibility in the future.

¶6.     On December 17, 2019, Judge Cotton verbally ordered Donaldson to begin preparing the orders of the youth court starting the next month. Specifically Judge Cotton directed him to prepare the orders for all delinquency cases beginning in January 2020 and then to prepare the orders for all abuse and neglect cases beginning in March 2020.

¶7.     On January 16, 2020, Donaldson responded by sending Judge Cotton a letter in which he declined to follow the judge's verbal order to prepare the orders for certain youth court matters because he "simply do[es] not have time nor desire to do something that [he] do[es] not believe that should be in [his] job description as Yazoo County's Prosecuting Attorney." Donaldson argued that, based on statutory requirements and opinions of other prosecutors and the attorney general's office, his "duties end upon adjudication and disposition" and "[t]hey do not include any clerical work beyond that point." For support, Donaldson cited an attorney general opinion to the effect that "paperwork necessary for taking a juvenile into

3

custody and disposition of a case should be done by youth court staff, hired by the judge and paid by the county, out of the court budget, as provided for in Sec. 43-21-119." Miss. Att'y Gen. Op., No. 96-0829, 1996 WL 744342, *Harkey*, at *2 (Dec. 16, 1996). Donaldson included copies of Mississippi Code Sections 43-21-119 and 43-21-123, opining that those statutes "provide that you, as Youth Court Judge, or your designee, are responsible for appointing sufficient staff, including clerical, hired by you and paid by the county out of funds allocated in the court's budget."

¶8.    In response to Donaldson's letter, Judge Cotton requested an opinion from the attorney general, asking whether a "Youth Court Prosecutor is responsible for preparing the orders issued by the youth court in the prosecution of a juvenile delinquent." Miss. Att'y Gen. Op., No. 2020-00020, 2020 WL 755928, *Cotton*, at *1 (Jan. 31, 2020). The attorney general issued its opinion on January 31, 2020. At first, the attorney general's office had declined to answer, saying that its opinions are not to be used "to advise one public officer about another public officer's duties and responsibilities." *Id.* But the attorney general's office went on to address the question of "who is responsible for the preparation of the orders of the Youth Court[?]" *Id.* Relying on the *Harkey* opinion, the attorney general's office concluded that "[a]ny paperwork for 'taking a juvenile into custody and disposition of a case' is the responsibility of the youth court staff which is hired by the judge and paid by the county out of the court's budget." *Cotton*, 2020 WL 755928, at *2. The *Cotton* opinion also included a footnote that said:

> Though finding the Judge to be ultimately responsible for the issuance of his orders, this office further opined that, "the Circuit Judge may, in his discretion,

4

require a clerk, administrator, attorney, or other individual involved in the criminal court process to draft and present a court order for the judge's signature, in order for the action to be properly recorded among the court's minutes.["]

*Id.* n.1 (quoting Miss. Att'y Gen. Op., No. 2001-0219, 2001 WL 523505, *Johnson*, at *1 (Apr. 27, 2001)).

¶9. On April 3, 2020, Judge Cotton entered an order mandating the immediate responsibility of the Yazoo County Court prosecutor for preparation of all youth court orders for all adjudication, disposition, permanency, and review hearings. After Judge Cotton had entered the order, she emailed Donaldson a copy of it with a message that explained the order and instructed him to begin preparing the orders immediately. Donaldson responded to the email, stating:

> Betsy, . . . I am not your employee. I was elected just like you were. I answer to the best of my knowledge to the Attorney General of this State. If you budget for and[sic] Youth Court Prosecutor I believe that he reports to you and you may set his duties. I am the County Prosecuting Attorney and can Prosecute any matter which I deem to be suitable for Prosecution. I believe that is the law. I believe that my duties are set by statute. . . . Also think about the fact that I have been doing this for more than 35 years.

¶10. No delinquency hearings were held by the youth court following the entry of the order dated April 3, 2020, until April 22, 2020. Additional hearings were held on April 27 and 28, 2020. Because Donaldson had not prepared orders for these three hearings, Judge Cotton, on May 4, 2020, emailed Donaldson to remind him to comply with her order of April 3, 2020, and "with Youth Court time standards for having [o]rders entered following Youth Court hearings."

5

¶11. The next day, May 5, 2020, Donaldson wrote a letter to Judge Cotton in which he again refused to abide by her order. In his letter, Donaldson explained his decision:

> The 1996 opinion, *Harkey*, . . . recited and concludes that "[a]ny paperwork necessary to commence a filing in the youth court would be the responsibility of the youth court prosecutor. However, any paperwork for taking a juvenile into custody and disposition of a case is the responsibility of the youth court staff, which is hired by the Judge and paid by the County out of the court's budget. Therefore, drafting the orders of the court would be the responsibility of the court staff hired by the Judge."
>
> You are apparently relying solely on a foot note referring to a Circuit Judge instead of the statute which is clearly stated and referred in both the 1996, opinion and the 2020, opinion requested by you. Please be advised that I do not work for you. I am not a clerical employee of the Court paid by the Youth Court, nor do I have a budget for clerical or other staff. Further, although I do not want to poison what has previously been an amicable relationship with you. (In fact I supported your initial appointment as Judge by the County Board of Supervisors and your later Election) I do not intend to follow your directive which I believe to be contrary to statute. In other words, I am an elected official bound by statute and not the wishes of the Youth Court Judge. Youth Court is not Circuit Court or a Criminal Court and has different procedures and practices.
>
> As I tried to point out to you earlier, you have several options as the Youth Court Judge. You may hire an additional clerical for your staff or hire a Youth Court Prosecutor and I will continue in my present role as County Prosecutor.

(Emphasis omitted.)

¶12. On May 13, 2020, "in an effort to resolve the matter without the necessity of a formal finding of contempt," Judge Cotton met with Donaldson to discuss their differences, but to no avail. The next day, May 14, 2020, Judge Cotton signed an order holding Donaldson in contempt "for his failure and refusal to abide by [the] Court's April 3, 2020 Order requiring him to prepare the Orders following any and all adjudications, dispositions, permanency and

6

review hearings."[2] The court imposed upon Donaldson "a fine of $150.00 (representing $50.00 per day of hearings for which he failed to prepare the Orders) upon [Donaldson] which shall be paid to the Clerk of this Court within ten (10) days of entry of this Order." Judge Cotton determined also that Donaldson's "continued refusal to prepare the Orders from this date forward will place him in continuing contempt of Court." Therefore, "for each day on which hearings are conducted for which [Donaldson] is required to prepare these Orders, and he fails or refuses to do so within ten (10) days of said hearings, [Donaldson] will be automatically fined an additional $50.00 for his continued contempt."

¶13.     On June 3, 2020, Donaldson filed his notice of appeal. On appeal, Donaldson asks

> [w]hether an [o]rder by Youth Court Judge Cotton directing County Prosecutor Donaldson to prepare all Youth Court orders rendered without, and in fact contrary to statutory authority, as well as Attorney General Opinions thereby (1) constituting an invalid and void order wholly lacking as the prerequisite foundation upon which an Order of Contempt can thereafter issue for failing to comply and (2) precluding issuance of a constructive Contempt Order when Yazoo County Prosecutor Donaldson, as a public officer and in good faith, acted in accordance with the Attorney General Opinions and was thereby precluded from incurring civil or criminal liability.

Additionally, he argues that the order of contempt violated his due process rights as he was not properly served and he was deprived of "his right to a fair and impartial hearing before a separate presiding judge not occupying dual and conflicting roles of prosecutor and judge."

---

[2]Both parties and the docket say that the order of contempt was filed on May 15, 2020. The document itself reflects that it was filed with Mississippi Electronic Courts (MEC) on May 26, 2020.

## STANDARD OF REVIEW

¶14. "[Q]uestions of law are reviewed de novo." *Miss. Dep't of Revenue v. Hotel & Rest. Supply*, 192 So. 3d 942, 945 (Miss. 2016) (citing *Equifax, Inc., v. Miss. Dep't of Revenue*, 125 So. 3d 36, 41 (Miss. 2013)).

¶15. This Court has held that when reviewing contempt cases:

> If the contempt is civil, the proper standard utilized for review is the manifest error rule. If the contempt is criminal, then we will proceed ab initio and will determine on the record whether the person in contempt is guilty of contempt beyond a reasonable doubt. [*P.K. v. Hinds Cnty. Youth Ct. (In re Interest of E.K.)*, 20 So. 3d 1216, 1221 (Miss. 2009).]
>
> "However, it is not necessary to review the record if [a defendant] was guilty beyond a reasonable doubt [when a] case requires reversal on other procedural grounds." [*Purvis v. Purvis*, 657 So. 2d 794, 797 (Miss. 1994).]

*In re McDonald*, 98 So. 3d 1040, 1042-43 (Miss. 2012) (second and third alterations in original).

## DISCUSSION

### I. A youth court judge has the inherent authority to order a county prosecutor to prepare orders in youth court matters.

¶16. Donaldson contends that "Judge Cotton had no legal authority to order another elected official outside the employ of the Youth Court to perform the duties that the Legislature decreed were the responsibility of the Youth Court Judge and her salaried staff." Donaldson claims that "[r]equring another elected official to do work designated by the legislature to be performed, budgeted and paid for by the Youth Court and its staff, is an Order that the Youth has no power to make and accordingly not a lawful order." It is Donaldson's argument that Mississippi Code Section 43-21-119 (Rev. 2021) and Mississippi Code Section 43-21-123

(Rev. 2021) and two attorney general opinions provide that preparing youth court orders is the responsibility of the court staff hired by the youth court judge. Donaldson believes that Judge Cotton should hire another youth court staff member under Sections 43-21-119 and 43-21-123 instead of requiring him to prepare the orders, which he describes as clerical work.

¶17.    The operative question before the Court is whether a youth court judge has the authority to order a county prosecutor to prepare orders for youth court matters in which that official is the prosecuting attorney, not whether a youth court judge is required to hire additional court staff under Section 43-21-119 and Section 43-21-123. This Court has "recogniz[ed] and endors[ed] a trial judge's duty to control the courtroom, using reasonable measures to efficiently move matters along[.]" *In re Blake*, 912 So. 2d 907, 914 (Miss. 2005); *see also Newell v. State*, 308 So. 2d 71, 76 (Miss. 1975) ("The inherent power of this Court to promulgate procedural rules emanates from the fundamental constitutional concept of the separation of powers and the vesting of judicial powers in the courts." (citing *Matthews v. State*, 288 So. 2d 714 (Miss. 1974))); *Aeroglide Corp. v. Whitehead*, 433 So. 2d 952, 953 (Miss. 1983) ("[A]ll courts possess the inherent authority to control the proceedings before them including the conduct of the participants."). "A court's power to maintain control over the proceedings before it is not grounded in its punitive jurisdiction, but in the necessary and inherent power to regulate its proceedings." *Spore v. State*, 214 So. 3d 223, 227 (Miss. 2017) (internal quotation marks omitted) (quoting *Knott v. State*, 731 So. 2d 573, 576 (Miss. 1999)); *see also United States v. Spellissy*, 374 Fed. Appx. 898, 900 (11th Cir. 2010) ("Courts have inherent powers derived from common law that assist in exercising

their enumerated judicial powers, such as managing their cases and courtrooms." (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1132 n.110 (11th Cir. 2001), *abrogated on other grounds as recognized by Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300 (11th Cir. 2021)). Additionally, "[t]he phrase 'judicial power' in Section 144 of the Constitution includes the power to make rules of practice and procedure, not inconsistent with the Constitution, for the efficient disposition of judicial business." *Jones v. City of Ridgeland*, 48 So. 3d 530, 536 (Miss. 2010) (emphasis added) (internal quotation marks omitted) (quoting *S. Pac. Lumber Co. v. Reynolds*, 206 So. 2d 334, 335 (Miss. 1968)). Accordingly, we find that Judge Cotton had the inherent power to order Donaldson to prepare youth court orders. Because of her inherent power as a youth court judge, Judge Cotton could manage the youth court over which she presided in the way that she deemed most efficient. That is what occurred here. Judge Cotton ordered Donaldson to be responsible for "generating, reviewing, and modifying all Orders following any and all adjudication, disposition, permanency and review hearings." She exercised her inherent discretionary powers as a judge to make the youth court operate efficiently by requiring Donaldson, a lawyer and an officer of the court, to draft the orders for those cases in which he was involved. Furthermore, drafting orders for judges is an ordinary professional activity that lawyers routinely discharge in practice. *See Hewes v. Langston*, 853 So. 2d 1237, 1275-76 (Miss. 2003) ("Lawyers customarily draw up proposed orders prior to a judge's ruling on a motion. This is done for *efficiency's* sake, not for

improper motives."[3] (emphasis added)). This Court finds that Judge Cotton's order of April 3, 2020, was valid and enforceable because she had the inherent power to enter it.

¶18.     Because Judge Cotton had the inherent authority to direct Donaldson to prepare orders for youth court matters, we find that Donaldson's arguments are unpersuasive and without merit.[4]

---

[3]Numerous local rules address the function of a lawyer's presenting to a judge proposed orders. *See* Loc. R. Cnty. Ct. of Lowndes Cnty. 6 ("With the exception of orders of dismissal, remand or continuance, all orders must be presented to the Court. . . . All orders presented to the Court must also bear the number of the case before the Court will sign same."); Loc. R. Cnty. Ct. & Youth Ct. of DeSoto Cnty. 2(b) ("A proposed Order shall accompany the Court's copy of any motion which may be heard ex parte or is granted by consent."); Loc. R. 5th Ch. Ct. Dist. 18 ("Judgments and orders should be presented to the Chancellor unless prior arrangements otherwise have been made."); Loc. R. 5th Ch. Ct. Dist. 19 ("All pleadings, judgments, and orders must show the name and Mississippi State Bar number of the individual attorney actually presenting it[.]"); Loc. R. 16th Ch. Ct. 9 ("Before announcing ready in an uncontested divorce, the attorney shall have with him a proposed Judgment for same. Before any testimony is offered, the attorney shall present the Chancellor or Master a worksheet and the proposed Judgment."); Loc. R. 11th Ch. Ct. Dist. 7. Preparation and Submission of Judgments ("(a) . . . all judgments must be presented to the assigned Chancellor within ten (10) calendar days after being directed to draw the same."); Loc. R. 8th Ch. Ct. Dist. 4(b) ("Proposed judgments *prepared by attorneys* shall conclude with the . . . ." (emphasis added)); Loc. R. 1st Cir. Ct. Dist. 4(b) ("A proposed Order shall accompany the court's copy of any motion which may be heard ex parte or is granted by consent."); Loc. R. for 4th Cir. Ct. Dist. 4(b) ("A proposed Order shall accompany the court's copy of all motions not agreed to[.]"); Loc. R. for 15th Cir. Ct. Dist. 6 ("Whenever an announcement of final disposition is made to the Court, a final order must be submitted to the Court on or before the last day of the term, or said case will be dismissed."); Loc. R. for 18th Cir. Ct. Dist. 1 Disposition of Criminal Case (a)-(c). All of the foregoing local rules were approved by the Mississippi Supreme Court pursuant to Mississippi Rule of Civil Procedure 83(b).

[4]Donaldson cites two attorney general opinions, which he avers support his position. We find neither of them is on point. In any event, opinions of the attorney general are not binding on this Court. *See **Basil v. Browning***, 175 So. 3d 1289, 1293 (Miss. 2015) ("It is well-settled that Attorney General's Opinions are not binding on this Court and serve only as persuasive authority in appropriate cases.").

**II. The order of contempt found, in effect, that Donaldson had committed constructive criminal contempt. As a result, Donaldson's due process rights were violated.**

¶19. The contempt order does not specify whether Donaldson was found to be in civil or criminal contempt of court. Donaldson argues that he had been charged with constructive criminal contempt and that his due process rights were violated because he did not receive "notice via service of process under [Mississippi Rules of Civil Procedure] 81(d)[,]" and he did not receive a separate hearing that "should have been tried by another judge."

¶20. Judge Cotton argues that the order of contempt was a valid civil contempt order because the court entered it with the primary purpose of gaining Donaldson's compliance with the order dated April 3, 2020. Judge Cotton argues also that "[i]f, however, this [C]ourt views [Donaldson's] contempt as criminal contempt, then it must be characterized as direct contempt." Judge Cotton contends that under *Wyssbrod v. Wittjen*, 798 So. 2d 352 (Miss. 2001), the court's having personal knowledge of the offense allows Donaldson's conduct to fall within the direct contempt category and "could be summarily handled by the court without formal notice or a separate evidentiary hearing."

¶21. Mississippi Code Section 43-21-153 provides that:

   (1)   The youth court shall have full power and authority to issue all writs and processes including injunctions necessary to the exercise of jurisdiction and to carrying out the purpose of this chapter.

   (2)   Any person who wilfully violates, neglects or refuses to obey, perform or comply with any order of the youth court shall be in contempt of court and punished by a fine not to exceed five hundred dollars ($500.00) or by imprisonment in jail not to exceed ninety (90) days, or by both such fine and imprisonment.

12

Miss. Code Ann. § 43-21-153 (Rev. 2021). "The decision to hold a person or entity in criminal or civil contempt also is a discretionary function of the trial court." *In re Spencer*, 985 So. 2d 330, 337 (Miss. 2008) (citing *Wyssbrod*, 798 So. 2d at 359).

¶22. "Contempt convictions are to be carefully examined." *In re Smith*, 926 So. 2d 878, 887 (Miss. 2006) (citing *Melvin v. State*, 210 Miss. 132, 48 So. 2d 856 (1950)). "The first question is whether the contempt is civil or criminal in nature, which we determine by looking at the primary purpose of the contempt order." *Id.* (citing *Cooper Tire & Rubber Co. v. McGill*, 890 So. 2d 859, 868 (Miss. 2004)). This Court has held that:

> If the primary purpose is to enforce the rights of private party litigants or to enforce compliance with a court order, the contempt is civil. [*Common Cause of Miss. v. Smith*, 548 So. 2d 412, 415 (Miss. 1989).] One may be jailed or fined for civil contempt, however, the contemnor must be relieved of the penalty when he performs the required act. *Hinds County Bd. of Supervisors v. Common Cause of Mississippi*, 551 So. 2d 107, 120 (Miss. 1989). Criminal contempt penalties are designed to punish for past offenses and they do not end when the contemnor has complied with the court order. *Smith*, 548 So. 2d at 415-16.
>
> Conduct directed against the court's dignity and authority is criminal contempt. *Lawson v. State*, 573 So. 2d 684, 686 (Miss. 1990). It involves an act "which tends to bring the court into disrepute or disrespect." *Lawson*, 573 So. 2d at 686 (quoting *Cook v. State*, 483 So. 2d 371, 374 (Miss. 1986). Conduct amounting to criminal contempt must be directed against the court or against a judge acting judicially rather than individually. *Culpepper v. State*, 516 So. 2d 485, 486 (Miss. 1987).

*Purvis*, 657 So. 2d at 796-97.

¶23. In determining a contempt's purpose, "the determination should focus on the character of the sanction itself and not the intent of the court imposing the sanction." *Miss. Dep't of Mental Health v. Lamar Cnty. (In re C.W.)*, 250 So. 3d 1248, 1255 (Miss. 2018) (internal

quotation marks omitted) (quoting *In re McDonald*, 98 So. 3d at 1043). The order of

contempt stated in relevant part as follows:

> As a result of his actions, this Court has no alternative but to hold Mr. John I.
> Donaldson in contempt of Court for his failure and refusal to abide by this
> Court's April 3, 2020, Order requiring him to prepare the Orders following any
> and all adjudications, dispositions, permanency and review hearings. Mr.
> Donaldson is in contempt of Court for his failure to prepare any and all Orders
> since the entry of the April 3, 2020, Order requiring him to do so. Therefore,
> the Court does hereby impose a fine of $150.00 (representing $50.00 per day
> of hearings for which he failed to prepare the Orders) upon Mr. Donaldson
> which shall be paid to the Clerk of this Court within ten (10) days of entry of
> this Order.
>
> Further, his continued refusal to prepare the Orders from this date forward will
> place him in continuing contempt of Court. As such, for each day on which
> hearings are conducted for which Mr. Donaldson is required to prepare these
> Orders, and he fails or refuses to do so within ten (10) days of said hearing,
> Mr. Donaldson will be automatically fined an additional $50.00 for his
> continued contempt.

¶24.    "The purpose of civil contempt is to compel compliance with the court's orders,

admonitions, and instructions, while the purpose of criminal contempt is to punish." *In re*

*McDonald*, 98 So. 3d at 1043 (internal quotation marks omitted) (quoting *Graves v. State*,

66 So. 3d 148, 151 (Miss. 2011)). The order of contempt found Donaldson in contempt "for

his failure to prepare any and all Orders since the entry of the April 3, 2020, Order[,]" *i.e.*,

past behavior, and sanctioned him with a $150 fine for that past behavior. The court went on

to find Donaldson in "continuing contempt of [c]ourt" for "his continued refusal to prepare

the [youth court] orders[.]" The purpose of the order of contempt as a whole was not to

motivate Donaldson to comply with Judge Cotton's April 3, 2020 order. Rather, the primary

purpose of the contempt order as a whole was to punish Donaldson for his having failed to

14

comply with the court's order of April 3, 2020. The order of contempt stated clearly that Donaldson was being held in contempt "for his failure and refusal to abide by this [c]ourt's April 3, 2020, [o]rder[.]" The contempt order fined Donaldson $50 each for three youth court hearings after that date for which he had failed to prepare orders, totaling $150. The contempt order punished Donaldson for failing to prepare the youth court orders resulting from hearings conducted on April 22, 27, and 28, 2020. Donaldson's conduct was directed against and was disrespectful of the court's authority, which are characteristics of criminal contempt. *See Lawson*, 573 So. 2d at 686. Despite the court's continuing contempt language, we find that the overriding and dominant purpose of the order of contempt was to punish Donaldson for his past disobedience of the court's order, thereby making his contempt criminal in nature.

¶25.    The dissent classifies the single order of contempt as a civil instead of criminal contempt because "Donaldson's status as contemnor would have ended with his compliance with the Court's April 3, 2020, order directing him to prepare orders." Diss. Op. ¶ 43. This is incorrect. First, contrary to the dissent's assertions, Donaldson cannot fully "purge himself of his contempt of court with compliance." Diss. Op. ¶ 42. The dissent focuses only on the continuing contempt language of the contempt order and ignores the first part of the order that imposed a $150 fine for Donaldson's *past* conduct. Additionally, this Court has held that

> Contempts are neither wholly civil nor altogether criminal. And "it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both." *Bessette v. Conkey*, 194 U.S. [324], [24 S. Ct. 665, 667, 48 L. Ed. 997 (1904)].

15

*Common Cause of Miss.*, 551 So. 2d at 120 (alterations in original) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441, 31 S. Ct. 492, 55 L. Ed. 797 (1911)).While it may be that the order's continuing contempt language is suggestive of civil contempt, the main thrust of the contempt order is the punishment of Donaldson for his past disobedience of the trial court's orders. *Cf. In re C.W.*, 250 So. 3d at 1256. The order of contempt clearly punished Donaldson by imposing a fine for his failure to abide by Judge Cotton's order of April 3, 2020, that required him to prepare the youth court orders for three court hearings. Then, Judge Cotton continued in the order to give Donaldson a warning that he would be in further contempt and would be punished automatically if he "fails or refuses" to prepare future youth court orders. The main objective of the contempt order was to punish Donaldson for his past refusal to prepare youth court orders, not to force or motivate him to comply with Judge Cotton's April 3, 2020, order.

¶26.    Because we determine the type of contempt "by looking at the primary purpose of the contempt order[,]" *In re Smith*, 926 So. 2d at 887 (citing *Cooper Tire*, 890 So. 2d at 868), it is clear that the primary purpose of the order of contempt was to punish Donaldson "for his failure and refusal to abide by [Judge Cotton's] April 3, 2020, [o]rder[.]" The order of contempt is largely criminal in nature. Therefore, we must determine whether it is a direct or constructive criminal contempt order.

¶27.    In *Dennis v. Dennis* we held:

> There are two forms of criminal contempt: direct and constructive. Direct contempt occurs in the presence of the court and may be dealt with immediately. Indirect contempt occurs outside the presence of the court, and the defendant must be provided notice and a hearing.

16

> Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed . . . .
>
> Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court . . . In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing.

*Moulds v. Bradley*, 791 So. 2d 220, 224-25 (Miss. 2001) (citations omitted).

*Dennis v. Dennis*, 824 So. 2d 604, 608-09 (Miss. 2002) (alteration in original). "[T]he distinction between direct and constructive contempt is important in determining the necessary procedural prerequisites to finding an individual in contempt." *Purvis*, 657 So. 2d at 797. "This Court has held that where the contemptuous act is direct . . . the court is empowered to punish the actor summarily, but where the act is constructive . . . the court must give the contemnor the procedural protections of notice and a fair hearing." *Wyssbrod*, 798 So. 2d at 360 (citing *Lawson*, 573 So. 2d at 686).

¶28.    The order of contempt was limited to Donaldson's refusal to abide by the order of April 3, 2020. Therefore, this Court examines Donaldson's actions after the youth court had entered its order of April 3, 2020. He did not prepare the youth court orders for hearings that had been conducted on April 22, 27, and 28, 2020. On May 5, 2020, in response to an email from Judge Cotton, Donaldson sent her a letter in which he expressly refused to prepare those orders. On May 13, 2020, Judge Cotton and Donaldson had an informal meeting to try to

come to agreement, to no avail. We find that Donaldson's contemptuous actions had been committed outside the presence of the court.

¶29. Judge Cotton argues that if the contempt order is of a criminal nature, it was a direct criminal contempt order and Donaldson was not entitled to notice or to a separate hearing. The judge's argument relies on *Wyssbrod*, 798 So. 2d 352. In *Wyssbrod*, an attorney informed the trial court by telephone the morning of a court-ordered hearing that he would not be at the hearing. *Wyssbrod*, 798 So. 2d at 357-61. As a result, the trial court held the attorney in direct contempt for failure to appear at the hearing. *Id.* at 358. On appeal, this Court recognized that "[c]ourts are divided as to whether an attorney's absence is best characterized as . . . direct contempt." *Id.* at 360 (citing *United States v. Nunez*, 801 F.2d 1260, 1264 (11th Cir. 1986)). "This Court has held that a party's failure to appear in court at the appointed time constitutes constructive contempt." *Id.* (citing *Murrell v. State*, 655 So. 2d 881, 887 (Miss. 1995), *disagreed with on other grounds by Dilworth v. State*, 909 So. 2d 731 (Miss. 2005)). Ultimately, we relied on a case from the United States Court of Appeals for the Fifth Circuit, *Smith v. Smith*, 145 F.3d 335, 342 (5th Cir. 1998), which recognized an exception: when the reason for the absence is known to the court, then the contempt can be treated as direct contempt. *Wyssbrod*, 798 So. 2d at 360 (citing *Smith*, 145 F.3d at 342). The Court found that the attorney's behavior constituted direct contempt because he had notified the court the morning of the hearing, meaning "[his] actions and reasons for his actions were known to the court." *Id.* at 361. As such, he "was not entitled to formal notice or a separate evidentiary hearing." *Id.*

18

¶30. The reasoning of Judge Cotton's argument seems to lead to a conclusion that *Wyssbrod* created an exception that allows a court to treat a constructive criminal contempt order as a direct criminal contempt order as long as the court had knowledge of the contemnor's actions and reasons for those actions, thus obviating the constructive contempt's due process protections. She asserts that "Donaldson specifically and directly advised Judge Cotton of his intention to refuse to obey the Order; therefore, that refusal [was] within Judge Cotton's knowledge." She claims that "[Donaldson's actions clearly amounted to direct contempt under *Wyssbrod* and could be summarily handled by the court without formal notice or a separate evidentiary hearing." Specifically, Judge Cotton asserts that Donaldson's letters and emails that informed the youth court of his intention not to comply with the order were equivalent to the attorney's telephone call in *Wyssbrod*.

¶31. We disagree. This Court based its opinion in *Wyssbrod* on an established exception from a Fifth Circuit Court of Appeals case. *See Smith*, 145 F.3d at 342 (citing *Thyssen, Inc. v. S/S Chuen On*, 693 F.2d 1171, 1175 (5th Cir. 1982)). But this Court's research of other jurisdictions' case law has revealed that contemptuous "[l]etters written to a judge seem uniformly to be cataloged as indirect and constructive contempt at best, never direct contempt." *State v. Calabretta*, No. CA-3170, 1986 WL 5512, at *3 (Ohio App. 1986); *see also Bulcke v. Sup. Ct. of Los Angeles Cnty.*, 94 P.2d 1006, 1009 (Cal. 1939) ("that letters or other written communications sent through the mail to a judge necessarily seem to fall within the class of contempts known as indirect or constructive contempts." (internal quotation marks omitted) (quoting 31 A.L.R. 1239))). The Supreme Court of California best

summarized why letters and emails should not form the basis for a direct contempt charge: "A judge usually cannot say with any certainty that a letter or telegram received by him purporting to be signed by a certain person was either written or sent by that person; hence such an act, if contumacious, should be classified as an indirect contempt." *Id.*

¶32. Therefore, we decline to apply the *Wyssbrod* exception because "[t]his Court will normally favor finding that the contemnor's actions involved constructive contempt when there is a legitimate issue as to whether the contemnor has committed constructive or direct contempt since constructive contempt requires a specification of charges, notice and a hearing." *Purvis*, 657 So. 2d at 798 (citing *Wood v. State*, 227 So. 2d 288, 290 (Miss. 1969)); *see also* *Ex parte Redmond*, 159 Miss. 449, 132 So. 328, 330 (1931) ("Whenever there is any doubt whether the alleged contemnor has been guilty of direct or constructive contempt, the doubt should be resolved in favor of the latter, rather than the former."). Thus, this Court finds that Donaldson's alleged misconduct, if proven, amounted to constructive criminal contempt and that Donaldson was entitled to due process protections.

¶33. The majority of Donaldson's conduct occurred outside the Court's presence and "[w]ith regard to a contempt proceeding, '[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Vincent v. Griffin*, 872 So. 2d 676, 678 (Miss. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). This Court has held that "[a] defendant in contempt proceedings is entitled to notice and is entitled to be informed of the nature and cause of the accusation, of his rights to be heard, to counsel, to call witnesses, to an unbiased judge, to

20

a jury trial,[5] and against self-incrimination, and that he is presumed innocent until proven guilty beyond reasonable doubt." ***Dennis***, 824 So. 2d at 609 (citing ***Young v. United States ex rel. Vuitton et Fils S.A.***, 481 U.S. 787, 798-99, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987)). Donaldson was not afforded those due process rights.

¶34.    "Criminal-contempt defendants are entitled to notice under Mississippi Rule of Civil Procedure 81(d), which requires service of process." ***In re McDonald***, 98 So. 3d at 1045 (citing Miss. R. Civ. P. 81(d)(2)). Here, there is no evidence that Donaldson received notice under Rule 81. As the Court stated in ***In re McDonald***, the court's "failure to issue [a] summon[s] for the contempt proceeding[] violated the Defendant['s] due-process rights and warrants reversal of the contempt judgment[]." ***Id.***

¶35.    Additionally, we have held that, in constructive contempt cases, "[t]he citing judge must recuse himself from conducting the contempt proceedings involving the charges." ***In re Smith***, 926 So. 2d at 888 (internal quotation mark omitted) (quoting ***Cooper Tire***, 890 So. 2d at 869). Because this was a constructive contempt order, Judge Cotton was required to recuse herself and her failure to do so violated Donaldson's due process rights. *See **Corr v. State***, 97 So. 3d 1211, 1215 (Miss. 2012) ("[The chancellor's] failure to do so violated Appellants' due-process rights and warrants reversal of the contempt judgments.").

¶36.    This Court has held that when there has been a failure to issue a Rule 81(d) summons to a defendant and no recusal by the trial judge, "the contempt judgments must be vacated."

---

[5]"[I]f the punishment is a fine exceeding $500 or imprisonment for more than six months, the accused is entitled to a trial by jury." ***Graves***, 66 So. 3d at 152 (citing ***Walls v. Spell***, 722 So. 2d 566, 574 (Miss. 1998)).

*In re McDonald*, 98 So. 3d at 1045 (citing *Purvis*, 657 So. 2d at 797). Because Donaldson

was not properly served with a Rule 81(d) summons and Judge Cotton did not recuse, this

Court vacates the contempt order and remands the case to the Yazoo County Youth Court.

*See id.* at 1045-46. Judge Cotton shall recuse.

>   **III.   Donaldson did not have immunity from civil and criminal liability under Mississippi Code Section 7-5-25.**

¶37. In addition to arguing that Judge Cotton violated his due process rights by holding him

in contempt, Donaldson asserts that the order of contempt violated his "immunity from civil

or criminal liability in acting in accordance with the Attorney General's legal opinion[]"

under Mississippi Code Section 7-5-25. The relevant portion of Mississippi Code Section

7-5-25 provides

> When any officer, . . . , or person authorized by this section to require such written opinion of the Attorney General *shall have done so and shall have stated all the facts to govern such opinion*, and the Attorney General has prepared and delivered a legal opinion with reference thereto, there shall be no liability, civil or criminal, accruing to or against any such officer, board, commission, department or person who, in good faith, follows the direction of such opinion and acts in accordance therewith unless a court of competent jurisdiction, after a full hearing, shall judicially declare that such opinion is manifestly wrong and without any substantial support.

Miss. Code Ann. § 7-5-25 (Rev. 2019) (emphasis added). First, Donaldson did not request

or receive a written opinion from the attorney general; therefore, this provision does not

apply. Second, even if the provision did apply, Donaldson's argument is without merit. The

court ordered Donaldson to prepare the orders on April 3, 2020, and reliance on an attorney

general opinion is no defense to failure to comply with a court order. This argument is

without merit.

## CONCLUSION

¶38. This Court finds that a youth court judge has the inherent power to order an attorney to prepare court orders for youth court matters in which the attorney is a participant. Therefore, we uphold Judge Cotton's order of April 3, 2020, as a valid, enforceable court order.

¶39. We find that Donaldson's noncompliance occurred outside the youth court's presence, making the contempt charge against him one of constructive criminal contempt. Thus, Donaldson was entitled to due process protections, which he was not given. Since Donaldson was not afforded a hearing or served with notice of a hearing, and Judge Cotton did not recuse, this Court vacates the order of contempt and remands the case to the Yazoo County Youth Court for proceedings consistent with this opinion. Judge Cotton shall recuse.

¶40. **VACATED AND REMANDED.**

**KING, P.J., MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J., AND BEAM, J.**

**COLEMAN, JUSTICE, DISSENTING:**

¶41. Because the record shows that Judge Cotton found John Donaldson to be in civil rather than criminal contempt, I, with respect, dissent.

¶42. Judge Cotton signed two orders finding Donaldson to be in contempt of her directive that he prepare youth court orders. In the first, she fined him $150 for past conduct, but she also wrote the following:

> Further, his continued refusal to prepare the Orders from this date forward will place him in *continuing contempt* of Court. As such, for each day on which

23

hearings are conducted for which Mr. Donaldson is required to prepare these Orders, and fails or refuses to do so within ten (10) days of said hearing, Mr. Donaldson will be automatically fined an additional $50.00 *for his continued contempt*.

(Emphasis added.)   From the plain text of the order, Donaldson would no longer be in contempt of court if he complied with the court's April 3, 2020, order that he prepare court orders.  In other words, he would purge himself of his contempt of court with compliance.

> If the primary purpose of the contempt order is to enforce the rights of private[-]party litigants or enforce compliance with a court order, then the contempt is civil.  ***Purvis v. Purvis***, 657 So. 2d 794, 796 (Miss. 1994).  The contemnor may be jailed or fined for civil contempt; however, the contemnor must be relieved of the penalty when he performs the required act.  ***Id.*** at 796–97.  Criminal contempt penalties, on the other hand, are designed to punish the contemnor for disobedience of a court order; punishment is for past offenses *and does not terminate upon compliance with the court order*.  ***Common Cause of Miss. v. Smith***, 548 So. 2d 412, 415–16 (Miss. 1989).

***Miss. Dep't of Mental Health v. Lamar Cnty. (In re C.W.)***, 250 So. 3d 1248, 1256 (¶ 27) (Miss. 2018) (alteration in original) (quoting ***In re Williamson***, 838 So. 2d 226, 237 (¶ 29) (Miss. 2002)).

¶43.   In the case *sub judice*, Donaldson's status as contemnor would have ended with his compliance with the court's April 3, 2020, order directing him to prepare orders.   Because, as set forth above, criminal contempt does not terminate upon compliance, I cannot agree with the majority that the contempt here is criminal in nature.  By contrast, we held the contempt order at issue in ***In re C.W.*** to be criminal, not civil, in nature because the contemnor could not possibly purge the contempt.  ***In re C.W.***, 250 So. 3d at 1256 (¶ 30).  In ***In re McDonald***, 98 So. 3d 1041 (¶ 1) (Miss. 2012), the chancellor found several parties in what he characterized as civil contempt.  He ordered that they, among other things, pay

$88,500 in sanctions. *Id.* On appeal, we held that the contempt was criminal in nature because such penalties indicate punishment rather than an attempt to compel compliance. *Id.* at 1043 (¶ 5). Notably absent from the Court's discussion of the contempt order at issue was any process by which the contemnors could purge their contempt. *See also* ***Corr v. State***, 97 So. 3d 1211 (Miss. 2012). In ***Hanshaw v. Hanshaw***, 55 So. 3d 143, 147 (¶¶ 15-18) (Miss. 2011), we characterized as civil contempt an order by a chancellor fining an ex-wife $500 for every hour she remained in the marital home as civil contempt. *Id.* at 147 (¶¶ 15-18).

¶44. The majority responds by arguing that Judge Cotton must have found Donaldson in criminal contempt because, should Donaldson choose to comply with the April 2020 order and thereby no longer be in contempt, he will not get the money he paid while in contempt back. The majority cites no authority for its proposition that fines paid while in contempt must be refunded once a party complies before the contempt can be considered civil, and indeed no such authority exists. That such is the case is not surprising. Civil contempt would lose much if its effectiveness if a contemnor could simply hold out against a court order, knowing that all fines would be refunded at the time of the contemnor's choosing. One purges oneself of civil contempt by obeying the order of the court, not by getting a refund. ***Smith***, 548 So. 2d at 415.

¶45. I agree with the majority's disposition of the primary issue of whether Judge Cotton had the authority to order Donaldson to prepare orders. However, because Judge Cotton

25

found Donaldson to be in civil contempt and because I discern no manifest error in her choosing to do so, I would affirm.

**RANDOLPH, C.J., AND BEAM, J., JOIN THIS OPINION.**