LAMAR, Justice,
for the Court:
¶ 1. Concerned with the sufficiency of process in multiple paternity and child-support cases, Chancellor D. Neil Harris conducted a hearing in which he found an individual process-server, Guy Jernigan; a notary, Thomas McDonald; and an owner of a process-service company, Edwin Cheshire (collectively, “Defendants”), to be in civil contempt of court for causing the filing of false proof-of-service affidavits. Ten days after the initial contempt hearing, the chancellor held a “sentencing hearing” in which he made all the Defendants jointly and severally liable for $88,500 in sanctions, required Jernigan and McDonald to issue written apologizes to the other chancellors in the Sixteenth Chancery Court District, and banned them from ever again serving process or notarizing documents for the Sixteenth Chancery Court District. The chancellor further ordered all the Defendants to be incarcerated every weekend until the reimbursements were received and the apologies were made. This Court subsequently found that the judgments were for constructive criminal contempt, as opposed to civil contempt. Thus, Chancellor Harris was bound by the additional due-process safeguards which govern constructive criminal contempt proceedings and erred by neither recusing himself from the proceedings nor notifying the Defendants of the specific criminal charges against them. We vacate the contempt judgments on these procedural grounds and remand the case to the Jackson County Chancery Court for further proceedings.
FACTS AND PROCEDURAL HISTORY
¶ 2. The Mississippi Department of Human Services (“DHS”) assigned a large number of paternity and child-support cases to the law firm of Young Williams, P.C., which, in turn, contracted with a process-service company, First Fidelity Trust Services, Inc. (“First Fidelity”), to serve the defendants in the DHS cases. First Fidelity then hired individual process servers and notaries to serve each defendant and execute proof-of-service affidavits to be filed with the appropriate courts.
¶ B. In the case of DHS v. April Gray, 2010-1284-JB, Jernigan filed a proof-of-service affidavit representing that he had served Gray on May 6, 2010, at her home located in Ocean Springs, Mississippi.[1]
*1042 The affidavit had been notarized by McDonald in Ridgeland, Mississippi, on May 6, 2010. The accuracy of the affidavit was called into question at a June 11, 2010, hearing in which Gray’s mother testified that she lived at the address listed on the affidavit, that no one had attempted to serve process there on May 6, 2010, and that her daughter could not have been served personally there on that date because she had been incarcerated at that time. In response, Chancellor Harris issued show-cause orders and subpoenas instanter on June 11, 2010, requiring Jerni-gan and McDonald to attend a hearing on June 14, 2010, and demonstrate why they should not be held in contempt for “failure to properly serve process, filing improper affidavits and/or notarizing improper affidavits.” [2] At the hearing, Chancellor Harris found Jernigan and McDonald “to be in civil contempt of court for their wilful, intentional and contumacious violation of the laws of the State of Mississippi.” Cheshire was not found to be in contempt at the hearing. Ten days later, Chancellor Harris conducted a combined “sentencing hearing,” which resulted in a Judgment and Order that made Jernigan, McDonald, and Cheshire jointly and severally liable for $88,500 in sanctions, required Jernigan and McDonald to write letters of apology to Chancellor Bradley and Chancellor Alfonso, enjoined Jernigan and McDonald from serving process or notarizing documents in the Sixteenth Chancery Court District of Mississippi, and ordered all the Defendants to be incarcerated on the weekends until the sanctions had been paid and the apologies issued.[3]
¶ 4. The Defendants each filed an emergency petition with this Court for writ of habeas corpus, for stay pending appeal, and for temporary stay of incarceration order[4] and separately appealed from the Judgment and Order and their individual Orders of Incarceration. On September 9, 2010, this Court issued orders resolving the Defendants’ petitions for writ of habe-as corpus and clarified that the Defendants actually were cited for constructive criminal contempt, not civil contempt.[5]
ISSUES
I. Whether the chancellor’s judgments holding the Defendants in contempt should be reversed on procedural grounds; and
II. Whether the chancellor’s judgments holding the Defendants in contempt should be reversed on the merits.
LAW AND ANALYSIS
I. Procedural Grounds For Reversal
A. Standards of Review
If the contempt is civil, the proper standard utilized for review is the manifest error rule. If the contempt is *1043 criminal, then we will proceed ab initio and will determine on the record whether the person in contempt is guilty of contempt beyond a reasonable doubt.[6]
“However, it is not necessary to review the record to see if [a defendant] was guilty beyond a reasonable doubt [when a] case requires reversal on other procedural grounds.”[7]
B. Contempt Classification
¶ 5. The appropriate procedure for a contempt proceeding is determined by the nature of the alleged contemptuous conduct. In classifying a contempt proceeding, it must first be determined if the alleged conduct constitutes civil or criminal contempt.
In classifying a finding of contempt as civil or criminal, this Court focuses on the purpose for which the power was exercised. On appeal, the trial court’s classification is not conclusive. Thus, the determination should focus on the character of the sanction itself and not the intent of the court imposing the sanction.[8]
“The purpose of civil contempt is to compel compliance with the court’s orders, admonitions, and instructions, while the purpose of criminal contempt is to punish.”[9] The chancellor did not hold the Defendants in contempt to compel compliance with an order, admonition, or instruction, but rather as punishment for past offenses: knowingly causing a false affidavit to be filed with the court, notarizing an affidavit without placing the affiant under oath, and knowingly notarizing a false affidavit. Therefore, the judgments were for criminal contempt, not civil contempt.
¶ 6. Next, it must be determined if the alleged conduct constitutes constructive or direct criminal contempt. Constructive criminal contempt, “is, for acts that — in whole or in part — occurred outside the presence of the judge[,]” while “direct criminal contempt is [for acts] which take[ ] place in the very presence of the judge making all the elements of the offense personal knowledge.”[10] This Court has provided that:
[djirect criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed ....
Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court .... In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing.[11]
¶ 7. Despite the chancellor’s classifications to the contrary, this case involves constructive criminal contempt, because the alleged improper service, affidavit exe *1044 cution, and affidavit filing occurred outside the judge’s presence.[12]
C. Due-Process Safeguards For A Constructive Criminal Contempt Proceeding
¶ 8. Since the Defendants were charged with constructive criminal contempt, they were entitled to certain due-process safeguards, including the recusal of Chancellor Harris and notice of the specific criminal charges against them.

1. Mandatory Recusal

¶ 9. Since Chancellor Harris initiated the constructive criminal contempt proceedings, he was required to recuse himself and have the hearings conducted by another judge. This Court has provided that:
in cases of indirect or constructive criminal contempt, “where the trial judge has substantial personal involvement in the prosecution, the accused contemnor must be tried by another judge.” ... [E]xamples of “substantial personal involvement in the prosecution” warranting recusal include cases where the trial judge acts as a “one-man grand jury;” where the trial judge is “instrumental in the initiation of the constructive-contempt proceedings;” and where the trial judge “acts as prosecutor and judge.”[13]
Furthermore, this Court repeatedly has found that a judge who initiates constructive contempt proceedings has substantial personal involvement and must recuse himself.[14] It is undisputed that Chancellor Harris initiated the contempt proceedings when he issued show-cause orders and subpoenas instanter requiring that McDonald and Jernigan appear and demonstrate why they should not be held in contempt. As the proceedings were for constructive criminal contempt, Chancellor Harris was required to recuse himself. His failure to do so violated the Defendants’ due-process rights and warrants reversal of the contempt judgments.

2. Notice of Criminal Charges

¶ 10. In addition to having an impartial judge, the Defendants were entitled to notice of the specific criminal charges against them. The Mississippi Constitution provides that, “[i]n all criminal prosecutions the accused shall have a right ... to demand the nature and cause of the accusation....”[15] For constructive criminal contempt, this Court requires notice of the charges and the specific conduct alleged to be contemptuous and a hearing.[16] The chancellor issued subpoe *1045 nas instanter and show-cause orders in the underlying DHS case notifying the Defendants of a show-cause hearing and instructing Jernigan and McDonald to “be prepared to present evidence as to why they should not be found in contempt of court and sanctions, including incarceration and/or a fíne, should be entered accordingly [due] to the failure to properly serve process, filing improper affidavits and/or notarizing improper affidavits.” Thus, Jernigan and McDonald received some notice of the contempt charges against them. However, neither a show-cause order nor a subpoena was ever issued for Cheshire, and nothing at the June 14, 2010, hearing suggested he would be punished at the June 24, 2010, hearing. In fact, Cheshire did not think he had to attend either hearing and was not before Chancellor Harris on June 24, 2010, when the Judgment and Order was issued.
¶ 11. Additionally, it is undisputed that the chancellor did not issue summonses notifying any of the Defendants of the criminal nature of the proceedings.[17] Criminal-contempt defendants are entitled to notice under Mississippi Rule of Civil Procedure 81(d), which requires service of process.[18] This Court has explained that, “[although contempt proceedings ... often are filed in the same cause number and proceed with the underlying ... case, they are held to be separate actions, requiring new and special summons under Mississippi Rule[ ] of Civil Procedure 81.”[19] Thus, the chancellor was required to provide the Defendants notice by issuing summonses under Rule 81 before conducting the contempt proceedings, and the Defendants could not have waived such process. The chancellor’s failure to issue summonses for the contempt proceedings violated the Defendants’ due-process rights and warrants reversal of the contempt judgments.
¶ 12. The Defendants were charged with constructive criminal contempt; therefore, the chancellor was required to recuse himself and to issue summonses to the Defendants giving them notice of the criminal contempt charges against them. Since the chancellor failed to do either, the contempt judgments must be vacated.[20]
II. The Merits Of The Contempt Findings
¶ 13. As discussed above, the contempt judgments must be vacated on procedural grounds, obviating this Court’s need to address the merits of the contempt findings or determine whether the record shows that the Defendants are guilty of contempt beyond a reasonable doubt.[21] Accordingly, this issue is moot.
*1046 CONCLUSION
¶ 14. The contempt proceedings were for constructive criminal contempt, and therefore, the chancellor was required to afford the Defendants certain due-process rights, including recusing himself from the proceedings and issuing Rule 81 process to give them notice of the specific criminal charges against them. As he failed to do so, the chancellor violated the Defendants’ due-process rights. Accordingly, we vacate the contempt judgments of the Jackson County Chancery Court, remand the cases for entry of an order of recusal, and otherwise order proceedings consistent with this opinion.
¶ 15. VACATED AND REMANDED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, KITCHENS AND CHANDLER, JJ„ CONCUR. PIERCE AND KING, JJ., NOT PARTICIPATING.

. The show-cause orders reference two cases between DHS and April Gray, DHS v. April Gray, 2010-0955-CB, and DHS v. April Gray, 2010-1284-JB. Guy Jernigan executed the proof-of-service affidavit in the case of DHS v. April Gray, 2010-1284-JB. Brennon Do- *1042 rough executed the proof-of-service affidavit in the case of DHS v. April Gray, 2010-0955-CB. McDonald was the notary on the proof-of-service affidavits in both cases.

. Jernigan claims he was not served with a subpoena or summons to appear at the June 14, 2010, hearing but chose to appear after being told about it by McDonald and Cheshire.

. Show-cause orders and subpoenas instanter were issued only in the two matters of DHS v. April Gray. However, at the sentencing hearing, affidavits executed by Jernigan and McDonald in 166 other cases were entered as evidence and used to calculate the sanctions.

. This Court issued orders on June 25, 2010, staying the chancery court’s judgments.

. The September 9, 2010, order also held that bond pending appeal from a judgment of criminal contempt is controlled by Mississippi Code Section 11-51-11 and vacated the stay entered by this Court on June 25, 2010.

. In re E.K., 20 So.3d 1216, 1221 (Miss.2009) (citation omitted).

. Purvis v. Purvis, 657 So.2d 794, 797 (Miss. 1994).

. Cooper Tire & Rubber Co. v. McGill, 890 So.2d 859, 867-68 (Miss.2004) (citations omitted) (emphasis in original).

. Graves v. State, 66 So.3d 148, 151 (Miss.2011) (citations omitted).

. Varvaris v. State, 512 So.2d 886, 887-88 (Miss. 1987) (citation omitted) (emphasis added).

. In re 'Williamson, 838 So.2d 226, 237 (Miss.2002) (citation omitted) (emphasis added).

. See Graves, 66 So.3d at 153 (providing that indirect criminal contempt is "for acts that— in whole or in part — occurred outside the presence of the judge.”).

. Graves, 66 So.3d at 154 (citations omitted).

. Graves, 66 So.3d at 153-54 (providing that "[the judge] was the complainant for alleged criminal contempt that occurred, at least in part, outside his presence[,]" and that "[the judge] should not have presided over Graves’s contempt proceeding.”); In re Smith, 926 So.2d 878, 888 (Miss.2006) ("The citing judge must recuse himself from conducting the [constructive] contempt proceedings involving the charges.”) (quoting Cooper Tire, 890 So.2d at 869) (emphasis added); Terry v. State, 718 So.2d 1097, 1105 (Miss.1998) ("Because [the judge] was instrumental in the initiation of the constructive contempt proceedings, this Court holds that he should not have heard the contempt proceedings.").

. Miss. Const, art. 3, § 26 (1890).

. See Purvis, 657 So.2d at 798 ("constructive contempt requires a specification of charges, notice and a hearing”) (citing Wood v. State, 227 So.2d 288, 290 (Miss. 1969); Moulds v. Bradley, 791 So.2d 220, 225 (Miss.2001) ("Without notice of [constructive] criminal contempt sanctions, [the accused’s] due process rights were violated.”); Premeaux v. Smith, 569 So.2d 681, 684 (Miss.1990) ("de *1045 fendant must be afforded minimum due process rights” and “[d]ue process includes notice to the alleged contemnor that she was being considered for criminal contempt”) (citing Mabry v. Howington, 569 So.2d 1165, 1167 (Miss. 1990); Cook v. State, 483 So.2d 371, 375 (Miss.1986)).

. In fact, the chancellor explicitly stated the judgments were for civil contempt, not criminal contempt.

. Miss. R. Civ. P. 81(d)(2).

. Shavers v. Shavers, 982 So.2d 397, 402 (Miss.2008) (citation omitted); see Hanshaw v. Hanshaw, 55 So.3d 143, 146 (Miss.2011) (“Because contempt proceedings are distinct actions, they require notice consistent with Mississippi Rule of Civil Procedure 81(d).”). "In contempt proceedings, '[c]omplete absence of service of process offends due process and. cannot be waived.’ " Dennis v. Dennis, 824 So.2d 604, 609 (Miss.2002) (brackets in original) (citations omitted) (emphasis added).

. Purvis v. Purvis, 657 So.2d 794, 797 (Miss. 1994).

. See Purvis, 657 So.2d at 797 ("[I]t is not necessary to review the record to see if [a defendant] was guilty beyond a reasonable doubt [when a] case requires reversal on other procedural grounds.”).