# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00741-SCT

*KIMBERLYN SEALS, FELECIA PERKINS, ESQ.,*
*JESSICA AYERS, ESQ., AND DEREK D. HOPSON,*
*SR., ESQ.*

*v.*

*ERNEST B. STANTON, II*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/10/2020 |
| TRIAL JUDGE: | HON. CATHERINE FARRIS-CARTER |
| TRIAL COURT ATTORNEYS: | DESHUN TERRELL MARTIN |
| | VATERRIA McQUITTER MARTIN |
| | DEREK D. HOPSON |
| | FELECIA PERKINS |
| | JESSICA NICOLE AYERS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | FELECIA PERKINS |
| | JESSICA NICOLE AYERS |
| ATTORNEYS FOR APPELLEE: | VATERRIA McQUITTER MARTIN |
| | DESHUN TERRELL MARTIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART; VACATED IN PART - 09/22/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Kimberlyn Seals and her counsels of record, Felecia Perkins, Jessica Ayers, and Derek

D. Hopson, Sr., appeal the Coahoma County Chancery Court's Contempt Order entered on

April 8, 2020, the Temporary Order entered on April 28, 2020, the Jurisdictional Final

Judgment entered on June 16, 2020, the Final Judgment on Motion for Findings of Fact and Conclusions of Law entered on June 18, 2020, and the Amended Final Judgment entered on June 18, 2020, arguing the chancellor lacked jurisdiction and erroneously found them to be in contempt of court.

¶2.     First, we find that the Coahoma County Chancery Court had jurisdiction. Second, we affirm the chancellor's finding that Perkins and Ayers were in direct criminal contempt for their failure to appear at a scheduled April 7 hearing. But we vacate the $3,000 sanction because it exceeds the penalties prescribed by statute. *See* Miss. Code § 9-1-17 (Rev. 2019). We remand for entry of judgment consistent with the statute. We also affirm the award of attorneys' fees to opposing counsel.

¶3.     Next, we find the chancellor erred by finding Hopson to be in direct criminal contempt for his failure to appear. Hopson did not provide notice to the chancery court before the hearing that he would not attend the hearing. Thus, his failure to appear was an act of constructive criminal contempt. Constructive criminal contempt charges require procedural safeguards of notice and a hearing. Thus, we vacate that judgment and remand for proceedings consistent with this opinion.

¶4.     Finally, we find that the chancellor erroneously found the attorneys to be in direct criminal contempt for violation of the September 2019 Temporary Order. If proved, such acts are civil contempt. We remand this matter for a determination of whether an indirect civil contempt proceeding should be commenced.

## FACTS AND PROCEDURAL HISTORY

¶5.     On May 12, 2017, Kimberlyn Seals gave birth to a child. Ernest B. Stanton, II, the father, filed a complaint with the Coahoma County Chancery Court, requesting that the court enter a judgment of filiation, make a determination of child support, award joint legal custody with a set standard visitation schedule, and require Kimberlyn to pay all court costs and attorneys' fees. A Rule 81 summons was issued on January 16, 2018, providing notice to Kimberlyn that she was summoned to appear and defend Ernest's complaint on March 1, 2018. *See* Miss. R. Civ. P. 81. Kimberlyn was served with process on January 22, 2018.

¶6.     On February 16, 2018, Kimberlyn, through counsel Richard B. Lewis, filed an answer and various counterclaims, requesting child support; requesting sole physical and legal custody of their child, with Ernest having limited visitation; and requesting that Ernest be required to pay his own attorneys' fees and all final court costs. That same day, Kimberlyn filed a motion for continuance of the scheduled March 1, 2018 hearing. Ernest's counsel agreed to continue the case to a later date and subsequently answered Kimberlyn's counterclaims.

¶7.     After months of inactivity, Larry Lewis filed a notice of entry of appearance as additional counsel for Kimberlyn on November 11, 2018. Subsequently, Richard Lewis filed a motion for leave to withdraw as counsel for Kimberlyn on March 6, 2019, on behalf of Larry Lewis and him.  Lewis attached a letter to the motion from Kimberlyn, requesting a change in legal representation. The chancellor entered an order granting the motion on March

3

8, 2019. On April 9, 2019, Derek Hopson entered an appearance as attorney for Kimberlyn.

¶8.     After another four months of inactivity, counsel for all parties met with the chancellor for an in-chambers conference. After the conference, the chancellor made an on-the-record ruling, directing the attorneys to prepare a temporary order to establish custody, visitation, and support.  Subsequently, the chancellor entered a Temporary Order Establishing Custody, Visitation & Support (nunc pro tunc to August 18, 2019) on September 12, 2019. The order reads, "[i]f the parties are unable to agree [to a permanent schedule], then they shall contact the Court for a final hearing to take place in and about March 2020."

¶9.     Kimberlyn filed a motion for reconsideration of the temporary visitation order entered on September 12, 2019, contending the order was unreasonable and unduly burdensome. Ernest filed a response in opposition. Kimberlyn then requested a trial setting to establish permanent visitation and support. The parties sought agreed hearing dates from the court administrator via email.  On January 24, 2020, the court administrator offered Hopson multiple dates and times beginning with April 7 at 10:30 a.m. or April 9, 16, 20, 30 at 10:00 a.m. On January 28, 2020, Hopson's legal assistant emailed the court administrator, agreeing to April 7, 2020, at 10:30 a.m. The very same day, Ernest's counsel also agreed to April 7 at 10:30 a.m. The court administrator subsequently confirmed with counsel via email that the agreed hearing date on permanent visitation and support was set for April 7, 2020.

¶10.    Then, on March 18, 2020, Hopson emailed Ernest's counsel requesting that the April 7 hearing be rescheduled. Ernest's counsel objected to continuing the hearing due to ongoing

4

visitation issues. As a result, Ernest requested and was granted a telephonic hearing to discuss visitation issues. During the March 20, 2020, telephonic hearing, Kimberlyn requested a temporary suspension of Ernest's visitation set forth in the September 2019 order to minimize possible exposure to COVID-19. The chancellor denied Kimberlyn's motion and ruled that the parties should continue to abide by the September 12, 2019 order.

¶11.    On that same day, Hopson filed a petition for interlocutory appeal in this Court on behalf of Kimberlyn, seeking to appeal the chancellor's order regarding visitation. On March 25, 2020, this Court denied that petition. Subsequently, Perkins and Ayers filed an entry of appearance on behalf of Kimberlyn on April 2, 2020. On April 6, 2020, Perkins and Ayers sought a continuance of the April 7 hearing. After filing their motion, Ayers emailed the court administrator asking if their motion could be heard. Ayers further informed the court administrator that she and Perkins would not appear at the April 7 hearing. The court administrator informed Ayers that the chancellor found their motion to be untimely and explicitly confirmed that the court expected all parties and counsel to appear on April 7 at 10:30 a.m.

¶12.    On April 7, 2020, the chancellor, Ernest, and Ernest's attorneys appeared for the scheduled final hearing.  First, the court made a public call for Kimberlyn and her counsel of record. Next, the court attempted to contact all by phone. The court then attempted contact via email. The court received no response from Kimberlyn, Perkins, or Ayers. Hopson did send a text message, asserting that he had been fired and that Perkins was Kimberlyn's new

attorney. He also asserted that he was at that time in DeSoto County preparing for a case in Tupelo. Hopson, however, had not filed a motion seeking withdrawal, and no permission for Hopson to withdraw as Kimberlyn's counsel had been granted.

¶13.    After Kimberlyn and her three attorneys of record failed to appear at the hearing, the chancellor entered an Order for Contempt of Court against Kimberlyn, Hopson, Perkins, and Ayers on April 8, 2020. Kimberlyn and the attorneys were held in contempt for failure to appear at the final hearing and separately for violation of the September 12, 2019 Temporary Order. The chancellor "assess[ed] a fine in the amount of $250.00 per day against Kimberlyn and each of her attorneys, Derek D. Hopson, Sr., Felecia Perkins and Jessica Ayers, for every day these individuals do not avail themselves to the Court, effective April 7, 2020." The chancellor awarded attorneys' fees to Ernest for preparation and attendance at the final hearing.

¶14.    In response, Kimberlyn and the attorneys filed a Motion to Set Aside Order for Contempt of Court as Void Ab Initio on April 17, 2020. They set forth that the chancellor did not have personal jurisdiction to conduct the final hearing, that they were not given proper notice of the final hearing, that they were not afforded the proper safeguards of notice and a hearing for the contempt order, and that the court should have recused from the contempt hearing.

¶15.    A status conference was held on April 23, 2020, via Zoom. The chancellor asked Kimberlyn's attorneys to explain why Kimberlyn and her attorneys failed to appear at the

6

final hearing. Hopson conceded that although he was still Kimberlyn's attorney of record, Perkins had taken over as lead counsel and was handling the case. Perkins informed the chancellor that she and Ayers had "no knowledge that any trial was set." The chancellor responded by stating,

> I'm not required to enter an Order setting. Once a date is agreed upon by the attorneys, I set it on my docket, and it is put out there in the system. . . . But we are not required to go out and create Orders and sign them and do whatever. So that was a validly set court date.

The attorneys of the parties offered oral arguments, submitted voluminous emails, and attached documents for the chancellor to review.

¶16.    Following the status conference, the chancellor entered a Temporary Order on April 28, 2020. The chancellor entered a Jurisdictional Final Judgment on June 16, 2020, based on its consideration of the April 23, 2020 proceeding and the documents and emails presented by both parties. The Jurisdictional Final Judgment upheld the contempt order, suspended the child support payments, upheld the award of Ernest's attorneys' fees, and held the September 12, 2019 Temporary Order would remain in effect. Additionally, in the Jurisdictional Final Judgment the chancellor clarified that the three attorneys, and not Kimberlyn, were assessed a total fine of $3,000, jointly and individually.

¶17.    On June 18, 2020, the chancellor entered an Amended Jurisdictional Final Judgment, attaching voluminous copies of the emails and text messages utilized by the chancellor in making her decision. In response, Kimberlyn filed a Motion for Findings of Fact and Conclusions of Law requesting the court to "delineate the specific facts in the record and

7

special legal authority that led to . . . findings and conclusions of law." The chancellor entered a Final Judgment on Motion for Findings of Fact and Conclusion of Law on July 10, 2020, affirming and restating the information in its Jurisdictional Final Judgment and Amended Jurisdictional Final Judgment. Kimberlyn filed a Motion for Stay of Judgment Pending Appeal Without Supersedeas Bond on July 13, 2020. Before the chancellor could rule on the motion for stay, Kimberlyn and her three attorneys of record filed their notice of appeal on July 15, 2020, appealing the chancellor's orders.

## DISCUSSION

### I.      Standard of Review

¶18.    This Court reviews jurisdictional issues under a *de novo* standard of review. *Joshua Props., LLC v. D1 Sports Holdings, LLC*, 130 So. 3d 1089, 1092 (Miss. 2014) (citing *McDaniel v. Ritter*, 556 So. 2d 303, 308 (Miss. 1989)). "Jurisdiction is decided based on the existing facts at the time the action is commenced." *Id.* (citing *Est. of Jones v. Phillips ex rel. Phillips*, 992 So. 2d 1131, 1137 (Miss. 2008)).

¶19.    Contempt issues are questions of law that are decided on a case-by-case basis. *Corp. Mgmt., Inc. v. Greene Cnty.*, 23 So. 3d 454, 466. The determination of the standard of review begins with whether the contempt is criminal or civil. *Id.* If the contempt is civil in nature, the scope of review is the manifest-error rule. *Id.*   If the contempt is criminal in nature, the scope of review is *ab initio*. *Latham v. Latham*, 261 So. 3d 1110, 1112 (Miss. 2019); *see also In re Smith*, 926 So. 2d 878, 886 (Miss. 2006) ("[T]his Court proceeds ab

8

initio to determine whether the record proves the appellant guilty of contempt beyond a reasonable doubt." (internal quotation mark omitted) (quoting *Purvis v. Purvis*, 657 So. 2d 794, 797 (Miss. 1994))).

## II.    Jurisdiction and Notice

¶20.    When this Court reviews a chancellor's decision, the standard of review is abuse of discretion. *Corp. Mgmt., Inc.*, 23 So. 3d at 459. This Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless . . . the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Id.* at 459 (alteration in original) (internal quotation marks omitted) (quoting *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 13-14 (Miss. 2007)).

¶21.    Rule 81(d)(1) of the Mississippi Rules of Civil Procedure provides that matters of paternity, child support, and child custody "shall be triable 30 days after completion of service of process . . . ." Miss. R. Civ. P. 81(d)(1). After the action is filed, Rule 81(d)(5) requires a summons to be issued commanding the respondent or defendant to appear and defend at a specified place and time for the matter to be heard. Miss. R. Civ. P. 81(d)(5).

¶22.    Rule 81(d)(5) further provides that a hearing must be set by court order following the issuance of the summons. Miss. R. Civ. P. 81(d)(5). If the action is not heard on the day the hearing is set, an order of continuance can be made the day of the hearing without the need of an additional summons on the respondent or defendant. *Id.*

¶23.    After Ernest filed his complaint on December 19, 2017, the chancery court clerk

9

issued a Rule 81 summons to Kimberlyn on January 16, 2018. By agreement of counsel, the hearing date was set for March 1, 2018, but was continued from that date to August 28, 2019. The temporary order resulting from the August 28 proceeding reads that if the parties could not come to an agreed resolution, another hearing would be held the following March. That hearing was ultimately set by agreement of the parties for April 7, 2020, at 10:30 a.m.

¶24. "The basic purpose of process is to impart notice." *Vincent v. Griffin*, 872 So. 2d 676, 677 (Miss. 2004) (citing *First Jackson Sec. Corp. v. B.F. Goodrich Co.*, 253 Miss. 519, 176 So. 2d 272, 276 (1965)). Here, the postponement of the original hearing date, March 1, 2018, was at the initiation of Kimberlyn and by agreement of both parties. After the hearing held on August 28, 2019, a temporary order was entered by the court followed by Kimberlyn's filing a Motion for Trial Setting on Permanent Visitation and Support. After Kimberlyn, the filing party, requested the final hearing date, the attorneys for both parties emailed the court administrator to obtain an agreed hearing date. On January 28, 2020, Hopson's legal assistant emailed the court administrator agreeing to the date and time of April 7, 2020, at 10:30 a.m. That same day, Ernest's counsel also agreed to April 7, 2020, at 10:30 a.m.

¶25. Although Rule 81(d)(5) provides that the chancery clerk "may be authorized to set the new date," the chancellor explained that the court's normal practice pursuant to the local rules was to set the hearing on her docket. *See* Rule 3(b) of the Local Rules of the Seventh Chancery Court District. As the party who asked for the initial postponement and then subsequently agreed to scheduling the hearing on April 7, 2020, at 10:30 a.m., Kimberlyn's

10

argument that she was deprived of notice lacks merit.

¶26. Perkins and Ayers entered notices of appearance prior to the hearing date. Furthermore, Hopson, who agreed to the hearing date, never withdrew from representing Kimberlyn. Perkins and Ayers seeking a continuance before the hearing contradicts their argument of improper notice. Because all had actual notice, failure to issue an additional Rule 81 summons after continuing and resetting the hearing by agreement does not divest a court of jurisdiction over the parties or their attorneys.

### III. Contempt for Failure to Appear

¶27. The first step in a contempt matter is to determine whether the contempt is criminal or civil in nature. *Hanshaw v. Hanshaw*, 55 So. 3d 143, 147 (Miss. 2011). "[I]n classifying a finding of contempt as civil or criminal, this Court focuses on the *purpose* for which the power was exercised." *In re McDonald*, 98 So. 3d 1040, 1043 (Miss. 2012) (quoting *Cooper Tire & Rubber Co. v. McGill*, 890 So. 2d 859, 867-68 (Miss. 2004)). Civil contempt penalties are entered to "enforce a *private party's rights* or compel compliance with a court's order." *Hanshaw*, 55 So. 3d at 147 (emphasis added) (citing *Purvis*, 657 So. 2d at 796). "Such orders . . . classically provide for termination of the contemnor's sentence upon purging himself of the contempt." *Newell v. Hinton*, 556 So. 2d 1037, 1044 (Miss. 1990) (quoting *Jones v. Hargrove*, 516 So. 2d 1354, 1357 (Miss. 1987)).

¶28. Conversely, criminal contempt penalties are entered to "punish the contemnor for disobedience of a court order[.]" *In re Hampton*, 919 So. 2d 949, 954 (Miss. 2006) (quoting

11

*McGill*, 890 So. 2d at 868). In other words, a punishment is entered for a past offense that interfered with a judge's ability to administer judgment. *Id.* Civil contempt usually involves an act towards another party, while criminal contempt involves the court itself.

> Conduct directed against the court's dignity and authority is criminal contempt. *Lawson v. State*, 573 So. 2d 684, 686 (Miss. 1990). It involves an act "which tends to bring the court into disrepute or disrespect." *Lawson*, 573 So. 2d at 686 (quoting *Cook v. State*, 483 So. 2d 371, 374 (Miss. 1986). Conduct amounting to criminal contempt must be directed against the court or against a judge acting judicially rather than individually. *Culpepper v. State*, 516 So. 2d 485, 486 (Miss. 1987).

*Purvis*, 657 So. 2d at 797.

¶29.    This Court has regularly held that contempt for failure to appear is criminal in nature. *See* *In re Hampton*, 919 So. 2d at 955; *Wyssbrod v. Wittjen*, 798 So. 2d 352 (Miss. 2001); *Wolf v. State*, 260 So. 2d 425, 433 (Miss. 1972). When the attorney does not appear, that particular hearing is concluded, and the attorney can no longer comply with that particular order. The contempt sanction is issued as a punishment to the attorney for that attorney's offense of failing to appear and disobedience of the court's order.

¶30.    In the Jurisdictional Final Judgment, the chancellor assessed "total contempt fines of $3,000 against Attorney Derek D. Hopson, Sr., Attorney Felecia Perkins, and Attorney Jessica Ayers, singularly and jointly, to be paid within 30 days of the date of this Order." The chancellor did not assess any fine or sanction against Kimberlyn individually. The contempt fines were assessed for past disobedience. A fine was punishment for the attorneys' failure to appear.

¶31.    When dealing with a criminal contempt matter, the second step is to determine whether the contempt is direct or constructive (indirect). ***Hampton***, 919 So. 2d at 955.

> A "direct contempt" consists of words spoken or acts done in the presence of the court which tend to embarrass or prevent orderly administration of justice. ***Jordan v. State***, 216 Miss. 542, 62 So. 2d 886 (1953). "A direct criminal contempt is one which takes place in the very presence of the judge making all the elements of the offense personal knowledge." And a contempt which is direct, in the immediate presence of the court, may be summarily punished without affidavit, pleading, or formal charges. 17 C.J.S. *Contempt* § 3 (1963). Where the acts of criminal contempt take place in the presence of the court, no evidence or proof other than the court's own knowledge is required. *Id.* § 122.
>
> There are also statutory directives regarding criminal contempt. [Mississippi Code Section] § 9-1-17 (1972) authorizes Supreme, Circuit, Chancery, and County Courts to fine and imprison any person guilty of contempt of the court while sitting, but the fine shall not exceed $100 for each offense, nor shall the imprisonment continue longer than thirty days.

***Varvaris v. State***, 512 So. 2d 886, 887-88 (Miss. 1987). Constructive contempt is "an act calculated to impede or embarrass, obstruct, defeat, or corrupt administration of courts of justice when the act is done beyond the presence of the court." ***Lawson***, 573 So. 2d 684 at 686 (internal quotation marks omitted) (quoting ***Coleman v. State***, 482 So. 2d 221, 222 (Miss. 1986)). "In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing." ***Moulds v. Bradley***, 791 So. 2d 220, 225 (Miss. 2001) (citing ***Purvis***, 657 So. 2d at 798).

¶32.    The general rule regarding a party's failure to appear before the court is that the conduct constitutes constructive contempt because the party's actions and reasons are yet to

13

be known to the court. *Wyssbrod*, 798 So. 2d at 360. While the absence of the party is in the presence of the court, the reasons for the party's absence and presence elsewhere is not before the court. *Id.* "Procedural protections are provided in cases of constructive contempt because the actions constituting the contempt are not within the knowledge of the court." *Id.* at 361 (citing *Varvaris*, 512 So. 2d at 887-88). As in the case *sub judice*, however, if an attorney informs the court in advance that they will not appear for the hearing and then fail to appear for that hearing, the court possesses knowledge of the attorney's lack of appearance, and the contempt in that case can be classified as direct. *Id.*

¶33.   In *In re Hampton*, the circuit court sent a letter to each parties' attorney requesting their presence before the court. *In re Hampton*, 919 So. 2d at 952. On the date of the hearing, the defendant's attorney failed to appear at the hearing and did not respond to any of the court's attempts to communicate with her. *Id.* The circuit clerk revealed that the defendant's attorney informed the clerk two weeks prior "off the record, that she may or may not be there." *Id.* at 955 (internal quotation marks omitted). This Court held that the attorney's actions constituted direct criminal contempt. *Id.* The Court reasoned that the attorney's communication indicated *awareness* of her obligation to appear at the hearing and demonstrated *intention* to be absent from the hearing. *Id.* at 360.

¶34.   In *Wyssbrod*, an attorney was found to be in contempt of court for failure to appear at a scheduled status conference. 798 So. 2d at 358. The order entered by the court read, in pertinent part:

The hearing was scheduled to address issues raised by Martin Aussenberg in his letter addressed to the Court dated January 24, 1997. Previous to the hearing, the Court was advised by Martin Aussenberg that a bankruptcy petition had been filed in the Bankruptcy Court of the Western District of Tennessee on behalf of Quality Pallets, Inc. Even though the Court, through the Court Administrator, advised Martin Aussenberg to attend the hearing, he chose not to do so under the guise of the bankruptcy filing. **This Court does not believe that Martin Aussenberg had a valid reason for failing to appear at the hearing of this cause, and, therefore, finds him in direct contempt of this Court for his failure to appear.**

*Id.* In affirming the court's finding of contempt and ultimate sanction against the attorney, this Court found:

Aussenberg knowingly disregarded a court order. He had notice of the hearing before the circuit court and was, in fact, informed by the court administrator the morning of the hearing that the court expected his presence regardless of the bankruptcy petition. He also had notice, prior to the hearing, that the court would not recognize as valid his explanation for not attending the hearing.

*Id.* at 360. This Court further held that the trial court properly summarily punished the attorney because this attorney's actions and reasons were "distinguishable from instances where an attorney merely fails to appear . . . ." *Id.* at 361. No notice, hearing, or other procedural safeguards were required. *Id.* Additionally, this Court limited the sanctions against the attorney to the $100 limitation found in Section 9-1-17. Today's case is no different.

### A. Perkins's and Ayers's Failure to Appear at the Final Hearing

¶35.    Perkins and Ayers gave notice to the court prior to the final hearing that they would not appear. Here, like in *In re Hampton* and *Wyssbrod*, Kimberlyn and her attorneys were scheduled to appear before the court but failed to appear at the April 7, 2020 final hearing.

15

Prior to the scheduled hearing, Perkins and Ayers filed a motion for continuance with the Court, which was denied. Ayers then sent an email stating neither she nor Perkins would appear at the April 7 hearing the next day. The court administrator informed Ayers that the Motion for Continuance was denied due to its untimely filing and explicitly stated, "we expect to see all parties at 10:30 am in the Chancery Court of Coahoma County, Mississippi on tomorrow, Tuesday, April 7, 2020."

¶36.    Similar to the attorneys in *In re Hampton* and *Wyssbrod*, the email and the motion for continuance reveal that Perkins and Ayers had *awareness* of their obligation to attend the hearing and they stated their *intention* to be absent from it, disregarding the court's order. Although the email from Ayers and the motion for continuance stated that Perkins and Ayers were aware of a hearing the following day, they knew their presence as Kimberlyn's representation was required because the email from the court administrator specifically stated that their appearance was required. The court directly expressed that it deemed their reason for being absent without merit. Like the attorneys in *In re Hampton* and *Wyssbrod*, the email from Ayers indicated that she and Perkins intended to disregard the order of the court by being absent from the hearing. The conduct of Perkins and Ayers constitutes direct criminal contempt. The chancellor did not err by summarily punishing them for their failure to appear.

¶37.    We affirm the chancellor's finding of direct criminal contempt as to Perkins and Ayers for their failure to appear. We vacate the judgment, however, and remand with instructions to the chancellor to impose a proper sanction or sanctions pursuant to Mississippi Code

16

Section 9-1-17. That section reads that a chancery court "shall have power to fine and imprison any person guilty of contempt of the court while sitting, but the fine shall not exceed One Hundred Dollars ($100.00) for each offense, nor shall the imprisonment continue longer than thirty (30) days." Miss. Code Ann. § 9-1-17 (Rev. 2019).

### B. Hopson's Failure to Attend the Final Hearing

¶38. Hopson's failure to appear, on the other hand, was not included in the email Ayers sent the court administrator stating that she and Perkins would not attend the April 7, 2020 final hearing. Because Hopson did not withdraw as counsel, the chancellor had no reason to know the he would not be present even if his co-counsel would not be in attendance. Because Hopson did not contact the court prior to the final hearing to inform the court he would not attend, his actions, intentions, or reasons, were not known by the court and, thus, constitute constructive criminal contempt. The court was required to provide him with the "procedural due process safeguards including a specification of charges, notice, and a hearing." *In re Hampton*, 919 So. 2d at 955. Therefore, the court erred by summarily punishing Hopson for his failure to appear. We reverse the chancellor's decision to sanction Hopson for failure to appear and remand the case to the chancellor to provide Hopson the charge, notice, and hearing.

### IV. Contempt for Violating Temporary Order

¶39. Kimberlyn's attorneys were also held in contempt of court for violating the September 12, 2019 Temporary Order. While the Order for Contempt of Court states failure to appear

17

as the first reason Kimberlyn and her attorneys are in contempt, it only cited "[t]he Defendant/Counter-Plaintiff, Kimberlyn, and each of her attorneys, Derek D. Hopson, Sr., Felecia Perkins and Jessica Ayers, are also held in [willful], wanton contempt of the Temporary Order entered by this Court on September 12, 2019" as the second reason. Again, in the Final Judgment, the chancellor did not fine or sanction Kimberlyn for any contempt.

¶40. Kimberlyn's attorneys contend that the trial court never explained which provisions of the Temporary Order they violated to be held in contempt. Ernest contends that the explanation by the chancellor was that "essentially, Kimberlyn and attorneys failed to render Ernest reasonable visitation in defiance of the temporary order." While this type of disobedience is civil in nature, the chancellor's punishment of $3,000 (total contempt fines) is more in line with a criminal sanction. We remand this matter for a determination of whether an indirect civil contempt proceeding should be commenced because the disobedience involved depriving Ernest of his right to visitation.

> Civil contempt orders enforce a private party's rights or compel compliance with a court's order. ***Purvis v. Purvis***, 657 So. 2d 794, 796 (Miss. 1994). Hence, the contemnor pays any resulting penalty to the injured party. ***Id.*** We have allowed a chancellor wide discretion in "exerting his coercive powers to enforce his decrees." ***Matthews v. Matthews***, 227 Miss. 358, 86 So. 2d 462 (1956). *See also* Miss. Code Ann. § 9-5-87 (Rev. 2002). But because civil contempt vindicates a private party's rights, the imposed sanction should not exceed the injured party's damages and expenses. ***Wyssbrod v. Wittjen***, 798 So. 2d 352, 368 (Miss. 2001).

***Hanshaw***, 55 So. 3d at 147.

**V.     Attorneys' Fees**

¶41. The Supreme Court of Mississippi has held that it is proper to award attorneys' fees in an action for contempt. *In re Hampton*, 919 So. 2d at 958. "[W]here a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney fees and expenses should be awarded to the wronged party." *Corp. Mgmt., Inc.*, 23 So. 3d at 466 (internal quotation marks omitted) (quoting *Mabus v. Mabus*, 910 So. 2d 486, 489 (Miss. 2005)). But, in order to determine if the attorneys' fees were reasonable, evidence must be presented to support the award. *Lane v. Lampkin*, 234 So. 3d 338, 351 (Miss. 2017). While certainly the chancellor had the discretion and authority to award Ernest attorneys' fees for their preparation and attendance at the April 7 hearing, the record lacks evidentiary support for the specified amount. We vacate that portion of the order and instruct the parties to present proof on remand.

**CONCLUSION**

¶42. We find that the chancellor had jurisdiction of all matters. We affirm the chancellor's order finding Perkins and Ayers in direct criminal contempt for their failure to the appear at the April 7 hearing. But we vacate the monetary sanction because it does not comply with Section 9-1-17, and we remand the case for the chancellor to award an appropriate sanction pursuant to Section 9-1-17. We reverse the chancellor's contempt order against Hopson for his failure to appear because his conduct constituted constructive (indirect) criminal contempt. Further, we vacate the chancellor's finding of contempt for the attorneys' violation of the Temporary Order and the chancellor's award of attorneys' fees. We remand this matter

19

for further proceedings consistent with this opinion.

¶43. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART; VACATED IN PART.**

**MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND COLEMAN, J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶44. Respectfully, I dissent. The majority applies the wrong law to this case, which mistakenly alters the type of contempt, if any, for which Perkins, Ayers, and Hopson (the attorneys) should be accused and held accountable. I find that the attorneys' alleged misconduct, if proved, constitutes constructive criminal contempt, and I would vacate the contempt order and remand the case to the Chancery Court of Coahoma County for further proceedings. In addition, I would order that the chancellor recuse.

¶45. Erroneously, the majority applies a judicially created exception from *Wyssbrod v. Wittjen*, 798 So. 2d 352 (Miss. 2001), and finds that Perkins's and Ayers's conduct in the sending of an email to the court administrator constituted direct contempt. Maj. Op. ¶ 32. The majority overlooks this Court's recent refusal to extend the *Wyssbrod* exception to written forms of communication, *i.e.* emails and letters. *See* **Donaldson v. Cotton**, 336 So. 3d 1099, 1111 (Miss. 2022). The majority concludes that the *Wyssbrod* exception applies because "the email and the motion for continuance reveal that Perkins and Ayers had *awareness* of their obligation to attend the hearing and they stated their *intention* to be absent from it, disregarding the court's order." Maj. Op. ¶ 36. Regardless of whether the email and

20

motion showed that Perkins and Ayers had awareness or intent, as a majority of this Court recognized in *Cotton*, "[a] judge usually cannot say with any certainty that a letter or telegram received by him purporting to be signed by a certain person was either written or sent by that person; hence such an act, if contumacious, should be classified as an indirect contempt." *Cotton*, 336 So. 3d at 1111 (internal quotation marks omitted) (quoting *Bulcke v. Sup. Ct. of Los Angeles Cnty.*, 94 P.2d 1006, 1009 (Cal. 1939)). Specifically, in *Cotton*, we held

> This Court based its opinion in *Wyssbrod* on an established exception from a Fifth Circuit Court of Appeals case. *See* *Smith* [*v. Smith*,] 145 F.3d [335, 342 (5th Cir. 1998)] (citing *Thyssen, Inc. v. S/S Chuen On*, 693 F.2d 1171, 1175 (5th Cir. 1982)). But this Court's research of other jurisdictions' case law has revealed that contemptuous "[l]etters written to a judge seem uniformly to be cataloged as indirect and constructive contempt at best, never direct contempt." *State v. Calabretta*, No. CA-3170, 1986 WL 5512, at *3 (Ohio App. 1986); *see also* *Bulcke v. Sup. Ct. of Los Angeles Cnty.*, 14 Cal. 2d 510, 94 P.2d 1006, 1009 (Cal. 1939) ("that letters or other written communications sent through the mail to a judge necessarily seem to fall within the class of contempts known as indirect or constructive contempts." (internal quotation marks omitted) (quoting 31 A.L.R. 1239))). The Supreme Court of California best summarized why letters and emails should not form the basis for a direct contempt charge: "A judge usually cannot say with any certainty that a letter or telegram received by him purporting to be signed by a certain person was either written or sent by that person; hence such an act, if contumacious, should be classified as an indirect contempt." *Id.*
>
> Therefore, we decline to apply the *Wyssbrod* exception because "[t]his Court will normally favor finding that the contemnor's actions involved constructive contempt when there is a legitimate issue as to whether the contemnor has committed constructive or direct contempt since constructive contempt requires a specification of charges, notice and a hearing." *Purvis* [*v Purvis*], 657 So. 2d [794,] 798 [(Miss. 1994)] (citing *Wood v. State*, 227 So. 2d 288, 290 (Miss. 1969))[.]

21

***Cotton***, 336 So. 3d at 1111. As in ***Cotton***, I would decline to apply ***Wyssbrod*** to a written form of communication, including an email, because "[l]etters written to a judge seem uniformly to be cataloged as indirect and constructive contempt at best, never direct contempt[,]"[1] and we "normally favor finding that the contemnor's actions involved constructive contempt when there is a legitimate issue as to whether the contemnor has committed constructive or direct contempt since constructive contempt requires a specification of charges, notice and a hearing."[2]

¶46.    The majority errs by applying the ***Wyssbrod*** exception. A correct analysis, founded upon applicable Mississippi case law, follows.

¶47.    The attorneys challenge the chancellor's decision to hold them in contempt for their failure to appear for the April 7, 2020, hearing and for violating the September 12, 2019, temporary order. This Court has made clear that "[t]he first question is whether the contempt is civil or criminal in nature, which we determine by looking at the primary purpose of the contempt order." ***In re Smith***, 926 So. 2d 878, 887 (Miss. 2006) (citing ***Cooper Tire & Rubber Co. v. McGill***, 890 So. 2d 859, 868 (Miss. 2004)). "If the primary purpose is to enforce the rights of private party litigants or to enforce compliance with a court order, the contempt is civil." ***Purvis***, 657 So. 2d at 796 (citing ***Common Cause of Miss. v. Smith***, 548 So. 2d 412, 415 (Miss. 1989)). If the purpose of the contempt order is to punish for past

---

[1]***Calabretta***, No. CA-3170, 1986 WL 5512, at *3.

[2]***Purvis***, 657 So. 2d at 798 (citing ***Wood***, 227 So. 2d at 290).

conduct and the penalties do not end once the contemnor has complied with the court order, the contempt is criminal. *Id.* at 797 (citing *Smith*, 548 So. 2d at 415-16). "The purpose of civil contempt is to compel compliance with the court's orders, admonitions, and instructions, while the purpose of criminal contempt is to punish." *In re McDonald*, 98 So. 3d 1040, 1043 (Miss. 2012) (internal quotation marks omitted) (quoting *Graves v. State*, 66 So. 3d 148, 151 (Miss. 2011)). From the record, it is clear that the purpose of the order of contempt was to punish the attorneys for their having failed to appear for the April 7, 2020, hearing and for their noncompliance with the temporary order entered on September 12, 2019. Therefore, the order of contempt is "largely criminal in nature" and "we must determine whether it is a direct or constructive criminal contempt order." *Cotton*, 336 So. 3d at 1110.

¶48.    This Court has held that

> There are two forms of criminal contempt: direct and constructive. Direct contempt occurs in the presence of the court and may be dealt with immediately. Indirect contempt occurs outside the presence of the court, and the defendant must be provided notice and a hearing.
>
> > Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed . . . .
> >
> > Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court . . . In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process

23

> safeguards, including a specification of charges, notice, and a hearing.

*Moulds v. Bradley*, 791 So. 2d 220, 224-25 (Miss. 2001) (citations omitted).

*Dennis v. Dennis*, 824 So. 2d 604, 608-09 (Miss. 2002) (alterations in original). In this case, the attorneys did not appear as required at the hearing scheduled for April 7, 2020, and they were accused of intentional noncompliance with the trial court's September 12, 2019, temporary order. This Court has held explicitly that "a party's failure to appear in court at the appointed time constitutes constructive contempt." *Wyssbrod*, 798 So. 2d at 360 (citing *Murrell v. State*, 655 So. 2d 881, 887 (Miss. 1995), *disagreed with on other grounds by Dilworth v. State*, 909 So. 2d 731 (Miss. 2005), *disagreed with on other grounds by Clark v. State*, 315 So. 3d 987 (Miss. 2021)). The majority finds that the contempt charge for violating the September 12, 2019, temporary order, should be remanded "for a determination of whether an indirect civil contempt proceeding should be commenced because the disobedience involved depriving Ernest of his right to visitation." Maj. Op. ¶ 40. There is no reason, however, to remand this matter because this Court is required to ascertain a contempt order's primary purpose to determine the type of contempt. *See In re Smith*, 926 So. 2d at 887 (citing *McGill*, 890 So. 2d at 868). Clearly, the primary purpose of the chancellor's order was to punish the attorneys for failing to comply with her prior order. The majority recognizes this: "[w]hile this type of disobedience is civil in nature, the chancellor's punishment of $3,000 (total contempt fines) is more in line with a criminal sanction." Maj. Op. ¶ 40. Additionally, the alleged misconduct by the attorneys regarding the temporary order

24

pertained to conduct outside the chancery court's presence. Therefore, there is no necessity to remand this case because the record strongly supports a finding of constructive criminal contempt, and the attorneys were entitled to the due process protections required in such circumstances.

¶49.   This Court has held:

> "[a] defendant in contempt proceedings is entitled to notice and is entitled to be informed of the nature and cause of the accusation, of his rights to be heard, to counsel, to call witnesses, to an unbiased judge, to a jury trial,[3] and against self-incrimination, and that he is presumed innocent until proven guilty beyond [a] reasonable doubt."

*Cotton*, 336 So. 3d at 1112 (first alteration in original) (quoting *Dennis*, 824 So. 2d at 609). We have held that "[c]riminal-contempt defendants are entitled to notice under Mississippi Rule of Civil Procedure 81(d), which requires service of process." *In re McDonald*, 98 So. 3d at 1045 (citing Miss. R. Civ. P. 81(d)(2)). Additionally, "[t]his Court has explained that, '[a]lthough contempt proceedings . . . often are filed in the same cause number and proceed with the underlying . . . case, they are held to be separate actions, requiring [a] new and special summons under Mississippi Rule[] of Civil Procedure 81.'" *Id.* (second, third, fourth,

---

[3]"[I]f the punishment is a fine exceeding $500 or imprisonment for more than six months, the accused is entitled to a trial by jury." *Cotton*, 336 So. 3d at 1112 n.5 (internal quotation marks omitted) (quoting *Graves*, 66 So. 3d at 152). I agree with the majority that the chancellor's award of $3,000 was erroneous and in violation of Mississippi Code Section 9-1-17 (Rev. 2019). Section 9-1-17 provides for either a maximum fine of $100 or an imprisonment of no more than thirty days. Here, the chancellor clearly imposed a fine substantially higher than $100. Due to the applicability of Section 9-1-17, a jury trial is not required on remand.

and sixth alterations in original) (quoting ***Shavers v. Shavers***, 982 So. 2d 397, 402 (Miss. 2008)). Each attorney was entitled to a Rule 81(d) notice regarding the contempt charges and the chancellor did not issue summonses for the contempt proceeding. Therefore, the chancellor "violated the [attorneys'] due-process rights and . . . a reversal of the contempt judgments [is warranted]." ***Id.***

¶50.    Also, "in constructive contempt cases, '[t]he citing judge must recuse himself from conducting the contempt proceedings involving the charges.'" ***Cotton***, 336 So. 3d at 1112 (quoting ***In re Smith***, 926 So. 2d at 888). Instead of entering an order of recusal, the chancellor held a zoom hearing, for which none of the attorneys had received a Rule 81(d) summons, during which she addressed the attorneys' alleged contemptuous conduct. Ultimately, the chancellor entered a final judgment finding that the chancery court did have authority to enter sanctions against the attorneys and that the attorneys should be fined a total of $3,000 to be paid within thirty days of the date of the order. It was error for the chancellor to hold the hearing to address the contempt claims because "[i]t is necessary for the individual[s] to be tried by another judge in cases of constructive contempt where the trial judge has substantial personal involvement in the prosecution." ***In re Williamson***, 838 So. 2d 226, 238 (Miss. 2002) (first alteration in original) (internal quotation marks omitted) (quoting ***Terry v. State***, 718 So. 2d 1097, 1104-05 (Miss. 1998)). The final judgment entered by the chancellor on June 18, 2020, is void because the hearing should not have occurred. The chancellor was  obliged to recuse, inasmuch as the hearing concerned contempt charges

26

not committed in the court's presence. Moreover, the attorneys did not receive the required Rule 81(d) notice of the hearing. Additionally, "[t]his Court has held that when there has been a failure to issue a Rule 81(d) summons to a defendant and no recusal by the trial judge, 'the contempt judgments must be vacated.'" **Cotton**, 336 So. 3d at 1112 (quoting **In re McDonald**, 98 So. 3d at 1045). Therefore, I would vacate the contempt order and remand the case to the Coahoma County Chancery Court for a proper contempt trial before a different judge.

¶51.    Because the chancellor erred and there has been no determination of whether the attorneys willfully violated the chancellor's orders, the chancellor erred by awarding attorneys' fees. *See Moses v. Moses*, 879 So. 2d 1036, 1041 (Miss. 2004) ("In order to award attorney's fees in a contempt matter, the trial court must first consider if there was a willful violation of the court's order."). I would remand this issue to the chancery court for reconsideration of the issue if the new trial judge should find the attorneys, or any of them, guilty of contempt. *See In re Hampton*, 919 So. 2d 949, 958 (Miss. 2006) ("The judge astutely bifurcated the hearing and considered sanctions subsequent to his ruling in the contempt hearing. Hence, the fine and sanctions ordered by the judge were proper.").

¶52.    I find that the trial court erred by sanctioning the attorneys. The attorneys' alleged misconduct occurred outside the trial judge's presence, which connotes constructive criminal contempt. Therefore, the attorneys were entitled to due process protections, including Rule 81(d) notices and recusal of the chancellor. Because neither of those events occurred, this

Court should vacate the contempt order and remand the case to the chancery court for a proper proceeding conducted regarding the contempt charges. Additionally, the award of attorneys' fees should be vacated and remanded until there has been a proper determination of whether the attorneys' alleged misconduct was willful.

**KING, P.J., AND COLEMAN, J., JOIN THIS OPINION.**